881 A.2d 770 (2005)
380 N.J. Super. 193
CHARLES BESELER COMPANY, Plaintiff-Respondent,
v.
O'GORMAN & YOUNG, INC., a corporation; Fireman's Fund Insurance Companies and The American Insurance Company, corporations, Defendants, and
New Jersey Manufacturers Insurance Company, a corporation, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 2005.
Decided September 9, 2005.
*771 Richard J. Williams, Jr., Morristown, argued the cause for appellant (McElroy, Deutsch, Mulvaney & Carpenter, attorneys; Michael J. Marone, of counsel and on the brief; Mr. Williams, on the brief).
Thomas W. Sweet, Mentham, argued the cause for respondent.
Before Judges STERN, S.L. REISNER and GRAVES.
The opinion of the court was delivered by
STERN, P.J.A.D.
New Jersey Manufacturers Insurance Company (NJM) appeals from an order of April 2, 2004 that granted the insured-employer Charles Beseler's motion for summary judgment, and denied NJM's cross motion, and declared that NJM was obligated to provide a defense and indemnification to Library Bureau Steel (LBS), a division of Beseler, in a personal injury action filed against it by an employee, Malden A. Homar. NJM has assumed that defense under a reservation of rights.[1]
NJM contends that it provides "no coverage under [its employer's liability] policy for an intentional-wrong claim." NJM issued a "Workers Compensation and Employers Liability Policy" to LBS. There is no dispute that it provided coverage at the time of the accident. The policy included "Part OneWorkers Compensation Insurance" and "Part TwoEmployers Liability Insurance."
Count seven of the underlying Homar complaint against Beseler and LBS alleges:
3. On May 23, 2001, Malden A. Homar was injured while operating a Cincinnati Shaper press brake machine at LBS.
4. At the time of the alleged incident, Beseler was one of the entities responsible for the design, manufacture, inspection, servicing and maintenance of the Cincinnati Shaper Machine, including all of its component parts.
5. Beseler was negligent because it failed to adequately design, inspect, service and maintain the Cincinnati Shaper Machine, including all of its component parts.
6. The actions or inactions of Beseler as set forth hereinabove created a defective and dangerous machine and rendered it unfit, unsafe and unsuitable for its intended or foreseeable users.
Count eight of the complaint further alleges:
3. On May 23, 2001, Malden A. Homar was injured while operating a Cincinnati Shaper press brake machine at LBS.
4. At the time of the alleged incident, Malden A. Homar was an employee of LBS.
5. Mr. Homar was removing metal from the brake machine when it unexpectedly cycled again and crashed down upon both of his hands crushing and severing eight of his fingers.

*772 6. As a result of this incident, Malden A. Homar sustained serious injuries.
7. At the time of the alleged incident, LBS was one of the entities responsible for the design, manufacture, inspection, servicing and maintenance of the Cincinnati Shaper Machine, including all of its component parts.
8. At the time of [] this incident, warning labels, safety or protective guards or other similar devices which would have prevented the incident were either missing, disabled or allowed to fall into disrepair.
9. Defendant LBS removed or disabled or caused to be removed or disabled such warning labels, safety or protective guards or other similar devices.
10. LBS failed to inspect and ensure the safety of the press brake machine which caused Mr. Homar's injuries.
11. Defendant LBS knowingly allowed the machine to operate knowing of its unfit, unsafe and dangerous condition.
12. The actions or inactions of LBS as set forth hereinabove created a substantial certainty that plaintiff would be injured and were a proximate cause of the injuries sustained by Malden Homar.
13. The actions and inactions of LBS as set forth hereinabove were in reckless disregard to plaintiff's rights.
14. As a proximate result of the actions and inactions of LBS as set forth hereinabove and as a proximate result of the defective machine, Malden A. Homar sustained amputations of eight fingers, (four on each hand), which required medical treatment, caused pain and suffering and disabled Malden Homar from the performance of usual activities and, which in the future, will similarly require medical treatment, cause him pain and suffering and disable him.
The allegations of a complaint generally control for purposes of the obligation to defend; "the complaint should be laid alongside the policy and a determination made as to whether, if the allegations [of the complaint] are sustained, the insurer will be required to pay the resulting judgment." Danek v. Hommer, 28 N.J.Super. 68, 77, 100 A.2d 198 (App.Div.1953), aff'd, 15 N.J. 573, 105 A.2d 677 (1954); see also, e.g., Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 173-74, 607 A.2d 1255 (1992); Salem Group v. Oliver, 128 N.J. 1, 607 A.2d 138 (1992). However, the duty to defend is a contractual obligation controlled by the policy, Hartford Accident & Indemnity Co. v. Aetna Life & Casualty Ins. Co., 98 N.J. 18, 22, 483 A.2d 402 (1984), and here the defense obligation, as embodied in "Part Two" of the policy, which deals with "employer's liability" beyond workers' compensation benefits covered by "Part One" of the policy, limits the obligation to defend to claims covered by the policy:

D. We Will Defend
We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.
We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.
Part Two of the policy covers "damages because of bodily injury to your employees" which the insured "legally must pay," "provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the *773 injured employee's employment," but excludes:
3. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;
4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;
5. bodily injury intentionally caused or aggravated by you;
NJM contends that we have already held, in New Jersey Mfrs. Ins. Co. [NJM] v. Joseph Oat Corp., 287 N.J.Super. 190, 670 A.2d 1071 (App.Div.), certif. denied, 142 N.J. 515, 665 A.2d 1108 (1995), that it has no obligation to defend a claim for intentional wrong by virtue of the "intentionally caused" exclusion of the policy. Specifically, NJM contends that Joseph Oat controls; that the Supreme Court's subsequent opinion in Schmidt v. Smith, 155 N.J. 44, 713 A.2d 1014 (1998), has no application to this case; that there is no "meaningful or relevant distinction between an employer's alleged subjective desire to injure and proof of an employer's intent to injure under the `substantial certainty standard'" as alleged in the employee's underlying complaint; that Beseler had no "reasonable expectation" of coverage; that "public policy favors exclusion of insurance coverage for liability arising out of the wrongful intentional acts of the insured;" and that there is "no duty to defend... because the claims asserted against LBS are not covered by Part Two [of the policy] and there is no obligation to defend where there is no coverage under the standard workers' compensation policy."
Part Two of the policy covers acts not covered by the statutory "elective" benefits of the workers' compensation law (covered by Part One of the policy). See N.J.S.A. 34:15-7. By statute, in exchange for the "elective" benefits of the workers' compensation scheme, for which the employee obtains compensation irrespective of fault, the employee waives the right to commence a common-law action "except for intentional wrong[s]." See N.J.S.A. 34:15-8.[2]N.J.S.A. 34:15-8 excepts from the waiver any act or omission which can be deemed an "intentional wrong." Nonetheless, exclusion C5 of Part Two of the policy expressly excludes "bodily injury intentionally caused or aggravated by you." We conclude that the insured plaintiff is entitled to coverage because there is no assertion that the bodily injury was "intentionally caused or aggravated by" the insured, as opposed to an injury caused by an intentional act of the employer that resulted in the injury.
An employee can bring a common-law action when the employer intends to injure the employee or knows "that death or injury [of the employee] are substantially certain to result." Laidlow v. Hariton Machinery Co., Inc., 170 N.J. 602, 621, 790 A.2d 884 (2002). To proceed the plaintiff must demonstrate "the evidence could lead a jury to conclude the employer acted with knowledge that it was substantially certain that a worker would suffer injury" and the alleged conduct is "outside the purview of the conditions the Legislature would have intended to immunize under the Workers' Compensation bar." Id. at 623, 790 A.2d 884. The Supreme Court permitted Laidlow's common-law action to proceed in a case like this one, in which the employee claimed "that his employer *774 ha[d] removed a safety device from a dangerous machine, knowing that the removal was substantially certain to result in injury to its workers and, in addition, deliberately and systematically deceived safety inspectors into believing that the machine was properly guarded." Id. at 606, 790 A.2d 884. The Supreme Court held that "the employee's allegations, if proven, meet both the conduct and context prongs of Millison [v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 174, 501 A.2d 505 (1985)], thus entitling the employee to pursue his common-law remedies." Ibid. Millison recognized that "industry knowingly exposes workers to the risks of injury and disease," 101 N.J. at 177, 501 A.2d 505, and distinguished between the claims of intentional exposure to asbestos, for which there could be no common-law action, id. at 179, 501 A.2d 505, and the claims of fraudulent concealment of the plaintiff's asbestos-related diseases, for which there could. Id. at 182, 501 A.2d 505. Only the latter could the Legislature "not have intended to insulate ... from tort liability." Ibid. See also Crippen v. Cent. Jersey Concrete Pipe Co., 176 N.J. 397, 405-11, 823 A.2d 789 (2003).
In Joseph Oat we reviewed the C5 exclusion involved in this case in the context of a Millison claim and held that there was no coverage. We expressly found no distinction between an intent to injure or injury resulting from circumstances in which injury was substantially certain to occur. Joseph Oat Corp., supra, 287 N.J.Super. at 196-97, 670 A.2d 1071. We noted that under Millison a "deliberate intent to injure can be proved not only by evidence of actual subjective intent to injure, but also by circumstances where injury is a substantial or virtual certainty, i.e., facts `without which an actor cannot be said to intend the harm that his act produces.'" Joseph Oat, supra, 287 N.J.Super. at 197, 670 A.2d 1071, quoting Millison, supra, 101 N.J. at 178, 501 A.2d 505. We added that "[t]here are not, then, two discrete categories of conduct which will satisfy the requirement of an `intentional wrong' to escape the exclusivity of workers' compensation remedies. Both subjective intent and substantial certainty of harm are expressive of the same standard, i.e., deliberate intent to harm." Ibid.
Subsequently, in Schmidt v. Smith, 155 N.J. 44, 713 A.2d 1014 (1998), the Supreme Court recognized the purpose of Part Two of the policy as a "gap filler" where the employee has the right to maintain a common-law action. Schmidt, supra, 155 N.J. at 49-50, 713 A.2d 1014. The liability portion of the policy was said "to bridge the gap between the typical workers' compensation obligations and the obligations arising from injuries not covered by the workers' compensation regime." Id. at 51, 713 A.2d 1014. Schmidt required coverage for the employer in a case involving sexual harassment of an employee by a corporate officer, and so held despite the same C5 exclusion involved in this case.[3] In considering a separate exclusion, C7, for damages arising from defamation, harassment, discrimination, personnel action and the like (which is in the Beseler policy, but not raised as an issue in this matter), the Court agreed with our assessment that the "employer would reasonably expect the employer's liability section to provide coverage for the types of injuries [plaintiff] suffered," ibid., and was valid "as long as the liability from those *775 discomforts is not related to bodily injury." Id. at 52, 713 A.2d 1014. Schmidt emphasized that N.J.S.A. 34:15-72 requires an employer to have coverage to protect employees from bodily injury. 155 N.J. at 51-52, 713 A.2d 1014.[4]See Francis X. Garrity, "Is the Laidlow Claim Covered? Whether an Employer's Liability Policy Covers an `Intentional Wrong' Remains to be Seen," 178 N.J.L.J. 524 (November 1, 2004). See also N.J.S.A. 34:15-71.
Despite Schmidt, NJM insists Joseph Oat controls. Under NJM's theory Part Two of the policy covers the "gap" caused by the absence of coverage under the elective provisions of N.J.S.A. 34:15-7, that is where there is no requirement that the employee have "elective" coverage, the employee elects to waive workers' compensation protection, see N.J.S.A. 34:15-7, the employee is physically injured by the intentional wrongdoing of a co-worker, see N.J.S.A. 34:15-8, or the injured employee is a minor, N.J.S.A. 34:15-10.
In Schmidt, the Supreme Court held that the C5 exclusion, involved in that case and Joseph Oat, was inapplicable. The Supreme Court did not cite Joseph Oat in Schmidt. In our opinion in Schmidt, we distinguished Joseph Oat because no corporate policy or activity was involved as a result of the single employee's wrongdoing, 294 N.J.Super. at 583, 684 A.2d 66. The employer was "vicariously liable for the intentional conduct of its president" and "[p]laintiff never attempted to prove that [the employer] acted intentionally in order to escape the exclusivity provision of N.J.S.A. 34:15-8." 294 N.J.Super. at 585, 684 A.2d 66. We found it significant that the employer was "vicariously liable for the intentional acts of" its president. Id. at 584, 684 A.2d 66. The Supreme Court agreed with us "that Exclusion C5 does not apply because there is no evidence [the employer] intended to harass" the plaintiff. 155 N.J. at 51, 713 A.2d 1014.
As previously noted, Joseph Oat rejected the distinction between coverage for "an actual subjective intent to injure" and "circumstances where injury is a substantial or virtual certainty," 287 N.J.Super. at 197, 670 A.2d 1071. While we could technically reconcile the two cases because here there is a claim of direct wrongdoing by the insured-employer, we decline to do so or to distinguish between claims of vicarious and direct liability for purposes of coverage. In Schmidt the Court upheld the carrier's obligation to defend and indemnify the insured where an employee received injuries flowing from its president's intentional misconduct, and Laidlow upholds a common-law action in circumstances like those alleged herein. See also Crippen, supra, 176 N.J. at 408-09, 823 A.2d 789.
It has been suggested by plaintiff that Schmidt overruled Joseph Oat and that N.J.S.A. 34:15-71, -72 and -78 mandate coverage "for all occupational injuries" irrespective of intent to injure. See also Garrity, supra, 104 N.J.L.J. at 532. We need not go so far, but conclude that the policy in this case excludes only injuries intentionally caused, and not the type of act alleged in this casean unintended injury caused by an intentional wrong. In light of Schmidt, and the fact exclusions in insurance policies are subject to "strict interpretation," Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576, 267 A.2d 527 (1970), we find no exclusion of the type of conduct alleged in this case which was the *776 type of wrongdoing for which a common-law cause of action was recently sustained in Laidlow. Schmidt specifically addressed the "reasonable expectations" of the insured in the context of exclusion C7; the same reasoning applies here. Comparatively little would be covered under Part Two if the C5 exclusion and the concept of "intentional wrong" are as broad and the "gap" as little, for coverage purposes, as NJM contends. In any event, exclusion C5 cannot be read to exclude bodily injuries based on the conduct alleged in this case. See President v. Jenkins, 180 N.J. 550, 563, 853 A.2d 247 (2004) ("[w]hen an insurance policy's language fairly supports two meanings, one that favors the insurer, and the other that favors the insured, the policy should be construed to sustain coverage").
We do not deal with an alleged act designed to purposely injure the employee, coverage for which would offend public policy. Further, in light of Schmidt, the fact Joseph Oat rejected any distinctions between "subjective intent and substantial certainty of harm," Joseph Oat Corp., supra, 287 N.J.Super. at 197, 670 A.2d 1071, must be deemed outdated in this case involving bodily injury.
We decide only that the underlying complaint does not allege an intent to injure and that this policy, consistent with statutory and case law authority, does not exclude coverage for intentional acts which are not themselves intended to cause injury.
The judgment of the Law Division is affirmed. NJM is ordered to provide coverage in the underlying matter.
NOTES
[1] The matter has been deemed "final" upon the disposition of all other defendants in the declaratory judgment action. We bypass consideration of whether the declared obligation to defend in the pending personal injury action constitutes a final judgment, because the issue is not raised. See Moon v. Warren Haven Nursing Home, 182 N.J. 507, 867 A.2d 1174 (2005).
[2] "Absent a specific election not to be covered, every employee is deemed to have elected the Workers' Compensation remedy for occupational injuries. N.J.S.A. 34:15-9." Schmidt v. Smith, 155 N.J. 44, 49, 713 A.2d 1014 (1998).
[3] The Supreme Court affirmed our judgment that the carrier had an obligation to defend the corporate officer, the employer's president, even though it had no duty to indemnify him. Schmidt v. Smith, 294 N.J.Super. 569, 586-91, 684 A.2d 66 (App.Div.1996), aff'd, 155 N.J. 44, 51, 53, 713 A.2d 1014 (1998).
[4] The Court noted "[t]here is nothing in the record to suggest that any part of [the employer's] liability stemmed from non-bodily injuries." Id. at 52, n. 1, 713 A.2d 1014. As in this case, it does not appear that the wrongdoer intended to cause the bodily injury.