883 A.2d 399

NEW JERSEY MANUFACTURERS INSURANCE COMPANY, PLAINTIFF–RESPONDENT, v. DELTA PLASTICS CORPORATION AND FLEXSOL PACKAGING CORPORATION, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 04, 2005—Decided September 30, 2005.

534

Before Judges COBURN, WECKER and S.L. REISNER.

*Leonard Rosenstein,* argued the cause for appellants (*Vasios, Kelly & Strollo,* attorneys; *Mr. Rosenstein,* on the brief).

*Michael J. Marone,* argued the cause for respondent (*McElroy, Deutsch, Mulvaney & Carpenter,* attorneys; *Mr. Marone,* of counsel; *Mr. Marone* and *Richard J. Williams, Jr.,* on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

This appeal raises a question recently addressed in *Charles Beseler Co. v. N.J. Mfrs. Ins. Co.,* 380 *N.J.Super.* 193, 881 *A.*2d 770 (App.Div.2005). The question is whether the C–5 exclusion in an employer's liability policy, applicable to certain employee "intentional wrong" claims, excludes coverage here. In *Charles Beseler,* on facts almost identical to those before us, we recently held that the C–5 exclusion for claims of "bodily injury intentionally caused" did not exclude coverage for claims alleging bodily injury that resulted from employer conduct that was "substantially certain" to result in injury, and ordered the insurer to provide coverage. We adhere to that decision.

In this declaratory judgment action brought by New Jersey Manufacturers Insurance Co. (NJM) with respect to a policy issued to defendants Delta Plastics Corporation and Flexsol Packaging Corp.[1] (hereinafter jointly referred to as "Delta Plastics"), the Law Division judge granted NJM's motion for summary judgment, holding that the C–5 exclusion applied and NJM was not required to provide Delta with a defense to its employee's complaint. We now reverse.

I

These are the background facts as they appear in the record. Alexis Attune, an employee of Delta Plastics, suffered bodily injury on the job while working on certain film winding equipment. NJM assumed Delta's defense on Attune's workers' compensation

---

[1] We are informed that Flexsol Packaging Corp. is the parent company of Delta Plastics Corporation.

claim and paid workers' compensation benefits as a result of his injury.

Attune then filed a complaint against various entities allegedly involved in the design, manufacture, sale, distribution, installation, repair, maintenance, or modification of the machinery. As to those defendants, Attune alleged defective design, lack of "adequate safety mechanisms" to prevent the machine from catching "clothing or limb," lack of sufficient guards, lack of "an emergency shut-off . . . adjacent to its moving parts," and a design that permitted use "without proper safety mechanism."

■ Attune also named Delta and Flexsol, alleging as to those defendants:

4. Defendant Delta acted in an *intentional* or otherwise grossly negligent [2] manner by providing the defective machine and rendered the machine unsafe by altering the machine and rendering it unsafe [sic], and requiring plaintiff to work under conditions that produced a *substantial certainty* that plaintiff would sustain injury, which conduct of defendant Delta was a proximate cause of the above mentioned injuries to plaintiff.

5. On information and belief defendant Flexsol Packaging Corp. is the successor to defendant Delta and is liable for the conduct of that defendant which caused injury to plaintiff.

[Emphasis added.]

Thus Attune initially sought to avoid the workers' compensation bar, *N.J.S.A.* 34:15-8, by alleging "intentional" conduct and a "substantial certainty" of injury. It is undisputed that Attune never alleged that Delta or its employees subjectively intended to cause him injury, but only that Delta's conduct in "altering the machine" and requiring him to work on the altered machine created circumstances that were "substantially certain" to result in injury. *See Laidlow v. Hariton Mach. Co., Inc.*, 170 *N.J.* 602, 790 *A.*2d 884 (2002); *Millison, supra*, 101 *N.J.* 161, 501 *A.*2d 505.

---

2 Gross negligence is clearly insufficient to avoid the workers' compensation bar, *N.J.S.A.* 34:15-8. *See Tomeo v. Thomas Whitesell Constr. Co., Inc.* 176 *N.J.* 366, 376, 823 *A.*2d 769 (2003) (citing *Millison v. E.I. du Pont de Nemours & Co.*, 101 *N.J.* 161, 501 *A.*2d 505 (1985)).

NJM had issued a "Workers Compensation and Employer's Liability Insurance Policy" to Delta Plastics covering the period when Attune was injured. That policy, like the policy issued to Charles Beseler, consisted of "Part One—Workers Compensation Insurance," and "Part Two—Employer's Liability Insurance." Part Two "applies to bodily injury by accident or bodily injury by disease" where the injury "arise[s] out of and in the course of the injured employee's employment" by the insured. NJM promises in section B of Part Two to "pay all sums [its insured] legally must pay as damages" and "where recovery is permitted by law." Section C of Part Two lists various exclusions, including sub-section 4 for "any obligation imposed by a workers' compensation . . . law." That exclusion mirrors the coverage provided by Part One. Section C also excludes, in sub-section 5 [the C–5 exclusion], "bodily injury intentionally caused or aggravated by [the insured]."

In addition, sub-section D of Part Two, entitled "We Will Defend," provides:

> We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.
>
> *We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.* We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

[Emphasis added.]

NJM denied Delta's request for a defense to Attune's complaint, claiming that the C–5 exclusion relieved it of any obligation to indemnify Delta for damages that Attune might recover and therefore relieved it of responsibility for Delta's defense. NJM brought this declaratory judgment action seeking to determine that it had no obligation to provide Delta with a defense, and moved for summary judgment. Delta Plastics cross-moved for summary judgment. Attune voluntarily dismissed his tort complaint against Delta, with prejudice and without payment of any kind.

After initially denying both parties' summary judgment motions, the Law Division judge granted NJM's motion. On the order granting summary judgment, the judge wrote:

> The Court has reconsidered its analysis of the facts and law and is satisfied that the Supreme Court's reasoning in *Schmidt* [*v. Smith*, 155 *N.J.* 44, 713 *A.*2d 1014 (1998),] applied to that set of facts and circumstances involving an LAD claim and was not intended to overrule [*N.J. Mfrs. Ins. Co. v.*] *Joseph Oat* [*Corp.*, 287 *N.J.Super.* 190, 670 *A.*2d 1071 (App.Div.), *certif. denied*, 142 *N.J.* 515, 665 *A.*2d 1108 (1995)]. That being said, plaintiff's claim is excluded by Exclusion C–5. That C–5 is a valid and enforceable exclusion. The public policy motivating the decision in *Schmidt* of ensuring insurance coverage for all work related bodily injury claims is unaffected by denying coverage to plaintiff's intentional-wrong claim since plaintiff is receiving workers' compensation benefits for this injury.

The judge thereafter denied Delta's motion for reconsideration for "failure to meet requirements of [*Rule*] 4:49–2."

## II

On appeal, Delta argues: "Pursuant to the Supreme Court's opinion in *Schmidt*, the coverage which NJM refused to provide to Delta Plastics was, in fact, mandated by the Workers' Compensation Act"; and "regardless of the Supreme Court's decision in *Schmidt v. Smith*, general principles of insurance law relating to the coverage obligations of an insurer clearly suggest that NJM had a duty to afford coverage to Delta Plastics."

In response, NJM argues: "Pursuant to the Appellate Division decision in *Joseph Oat*, there is no coverage under the policy for an intentional-wrong claim"; "there is no significant or relevant distinction between an employer's alleged subjective desire to injure and proof of an employer's intent to injure under the substantial certainty standard"; "the Supreme Court's decision in *Schmidt v. Smith* did not overrule *Joseph Oat*"; "New Jersey public policy favors exclusion of insurance coverage for liability arising out of the wrongful intentional acts of the insured"; and "NJM has no duty to defend because there is no obligation to defend when there is no coverage."

## III

As we said in *Charles Beseler,* "[w]e conclude that the insured plaintiff is entitled to coverage because there is no assertion that the bodily injury was 'intentionally' caused or aggravated by' the insured as opposed to an injury caused by an intentional act of the employer that resulted in the injury." 380 *N.J.Super.* at 198, 881 *A.*2d 770. Whether or not the Supreme Court's decision in *Schmidt* has implicitly overruled *Joseph Oat,*[3] we disagree with *Joseph Oat* with respect to the scope of the C–5 exclusion of Part Two coverage—the Employers' Liability Policy—and thus the scope of the Part Two coverage here.

The coverage dispute here concerns only the cost of Delta's defense, which ended when Attune voluntarily dismissed his complaint.[4] Ordinarily, an insurer's obligation to defend is broader than the obligation to indemnify. *Conduit and Found. Corp. v. Hartford Cas. Ins. Co.,* 329 *N.J.Super.* 91, 105, 746 *A.*2d 1053 (App.Div.), *certif. denied,* 165 *N.J.* 135, 754 *A.*2d 1212 (2000). The duty to defend is determined by comparing the allegations of the complaint (not the outcome of that complaint) with the coverage provided by the policy, *Voorhees v. Preferred Mut. Ins. Co.,* 128 *N.J.* 165, 173–74, 607 *A.*2d 1255 (1992), and is triggered by a claim which on its face would require indemnification. *Id.* at 180, 607 *A.*2d 1255. *See also Danek v. Hommer,* 28 *N.J.Super.* 68, 77, 100 *A.*2d 198 (App.Div.1953), *aff'd,* 15 *N.J.* 573, 105 *A.*2d 677 (1954).

---

[3] The Supreme Court opinion in *Schmidt* does not cite *Joseph Oat.*

[4] The order of dismissal was filed in October 2003, several months after the Supreme Court trilogy addressing the exclusive remedy provision of *N.J.S.A.* 34:15–8. *See Crippen v. Cent. Jersey Con. Pipe Co.,* 176 *N.J.* 397, 823 *A.*2d 789 (2003); *Mull v. Zeta Consumer Prods.,* 176 *N.J.* 385, 823 *A.*2d 782 (2003); and *Tomeo, supra,* 176 *N.J.* 366, 823 *A.*2d 769. That dismissal is subject to the inference that Attune concluded that his claim would not likely meet the intentional wrong exception to the exclusive remedy provision of *N.J.S.A.* 34:15–8.

NJM relies upon *Joseph Oat* in interpreting the C–5 "injury intentionally caused" policy exclusion as one that excludes the obligation to indemnify the employer irrespective of whether the plaintiff succeeds in avoiding the statutory bar by proof of subjective intent or substantial certainty. Concluding that it has no duty to indemnify in a substantial certainty intentional wrong case, NJM understandably contends it is also relieved of the duty to defend. But we are convinced that the intentional wrong that constitutes an exception to the workers' compensation bar under *N.J.S.A.* 34:15–8 is broader than the C–5 "injury intentionally caused" exclusion to Part Two coverage. The boundaries are not coterminous; the "injury intentionally caused" exclusion is narrower.

A brief explanation of the intentional wrong exception provides important background. In *Laidlow*, Justice Long explained the statutory workers' compensation bar, reviewing the essence of the Court's prior holding in *Millison*. *Laidlow, supra,* 170 *N.J.* at 605–12, 790 *A.*2d 884 (citing *Millison*, 101 *N.J.* at 169–82, 501 *A.*2d 505). The intentional wrong exception to the workers' compensation bar includes more than injury resulting from a subjective intent to injure. *Id.* at 617, 790 *A.*2d 884. The "substantial certainty" standard is "another method by which a plaintiff could prove an intentional wrong." *Laidlow, supra,* 170 *N.J.* at 614, 790 *A.*2d 884.

An employee's common law tort claim against an employer based upon conduct "substantially certain" to cause injury has two elements. First, the employer must know that the conduct was, objectively, substantially certain to cause injury; second, the injury must be, in the circumstances, "more than a fact of life of industrial employment," and the employer's conduct must be outside the bounds of that which the Legislature intended *N.J.S.A.* 34:15–8 to protect against common law liability. *Laidlow, supra,* 170 *N.J.* at 617, 790 *A.*2d 884. The first element is normally a jury question, whereas the second is "solely a judicial

function." *Id.* at 623, 790 *A.2d* 884. *See also Crippen v. Cent. Jersey Concrete Pipe Co.,* 176 *N.J.* 397, 408, 823 *A.2d* 789 (2003).

As plainly set forth in *Laidlow,* the intentional wrong exception to the workers' compensation bar applies both to injuries where the employee alleges conduct by an actor who subjectively intends to cause injury, as well as to injuries where the conduct alleged is of a kind "substantially certain" to cause injury although injury was not specifically intended. *Laidlow* involved only the delineation of the statutory intentional wrong that would avoid the workers' compensation bar and permit a common law tort action. It did not involve any question of insurance coverage.

We find no reason to conclude that the C–5 "injury intentionally caused" exclusion from employers' liability coverage is as broad as the statutory intentional wrong exception. The policy exclusion in our view applies only to injuries subjectively intended by the employer or its agent, a result consonant with the public policy against providing insurance coverage for criminal (specific intent) acts. *See Harleysville Ins. Cos. v. Garitta,* 170 *N.J.* 223, 231, 785 *A.2d* 913 (2001). Were it otherwise (as NJM argues), the C–5 exclusion would come very close to eliminating meaningful Part Two coverage.[5]

Several rules of construction support our conclusion. First, policy exclusions are to be construed narrowly in favor of coverage. *Butler v. Bonner & Barnewall, Inc.,* 56 *N.J.* 567, 576, 267 *A.2d* 527 (1970). Second, to the extent that the C–5 exclusion

---

[5] We recognize that there are certain employees whose injury claims are not subject to workers' compensation coverage, and therefore do not depend upon the intentional wrong exception to proceed at common law. Those claims could be covered by Part Two, even under NJM's broad view of the C–5 exclusion. One is the infant employee who is not a party to the statutory workers' compensation compact, *N.J.S.A.* 34:15–10; another is the employee who opts out of workers' compensation coverage, *N.J.S.A.* 34:15–9; the third is the "casual employee," *N.J.S.A.* 34:15–36. *See Cent. Nat'l Ins. Co. v. Utica Nat'l Ins. Group,* 232 *N.J.Super.* 467, 471–72, 557 *A.2d* 693 (App.Div.1989). But the overwhelming number of employees fall within the scope of *N.J.S.A.* 34:15–8.

drafted by the insurer is ambiguous, it must be construed against the carrier. *President v. Jenkins,* 180 *N.J.* 550, 563, 853 *A.*2d 247 (2004); *The Salem Group v. Oliver,* 128 *N.J.* 1, 4, 607 *A.*2d 138 (1992).

 The plain language of the policy exclusion is not as clear as NJM suggests and as *Joseph Oat* held. The exclusion would be unambiguous if it expressly excluded coverage for "all intentional wrongs within the exception allowed by *N.J.S.A.* 34:15–8." It does not. The exclusion therefore cannot fairly be construed to deny coverage where the injured employee's Law Division complaint alleges conduct that was "substantially certain" to cause injury, and therefore on its face is not, subjectively, an "injury intentionally caused."

Moreover, even if the language is deemed unambiguous, the reasonable expectations of the insured must be considered. *See, e.g., Zacarias v. Allstate Ins. Co.,* 168 *N.J.* 590, 595, 775 *A.*2d 1262 (2001); *Salem Group, supra,* 128 *N.J.* at 4, 607 *A.*2d 138; *see also Schmidt, supra,* 155 *N.J.* at 51, 713 *A.*2d 1014; *Beseler, supra,* 380 *N.J.Super.* at 200, 881 *A.*2d 770. The essence of the two-part policy, Part One covering workers' compensation defense and indemnification, and Part Two covering defense and indemnification in other employer liability situations, is seamless coverage. Part Two coverage has been described as a "gap filler." *Schmidt,* 155 *N.J.* at 49–50, 713 *A.*2d 1014. NJM's interpretation of Part Two would widen rather than fill the gap.

Delta has cited several decisions that are consistent with our conclusion. *See Royal Indem. Co. v. Soneco/Northeastern, Inc.,* 183 *F.Supp.*2d 526, 532 (D.Conn.2002) (citing *Reliance Nat'l Ins. Co. v. Vitale,* 183 *F.Supp.*2d 506 (D.Conn.2001)). The employers' liability policy at issue in *Royal* and in *Reliance* contained the same C–5 exclusion we address here. In *Reliance,* the District Court described the Connecticut Supreme Court's interpretation of that state's workers' compensation bar, comparable to the *Laidlow/Millison* interpretation of *N.J.S.A.* 34:15–8:

[A] plaintiff may escape the exclusivity of the Act and maintain a civil suit against his employer by demonstrating either (1) that the employer intended both the act itself and its injurious consequences ("the intended tort theory"), or (2) that the employer intended the act and knew that it was substantially certain to cause the injury ("the substantial certainty theory").

[183 *F.Supp.*2d at 510 (citing *Suarez v. Dickmont Plastics Corp.*, 242 *Conn.* 255, 698 *A.*2d 838 (1997)).]

*Accord Travelers Indem. Co. v. PCR Incorporated*, 889 *So.*2d 779 (Fla.2004) ("We ... hold that Part Two of the Workers Compensation and Employers Liability Policy issued to PCR by Travelers, which covers claims for 'bodily injury by accident' and excludes from coverage claims of 'bodily injury intentionally caused ... by [PCR],' extends coverage to a claim brought against PCR under the objectively-substantially-certain standard."); *see also Cavalier Mfg. v. Employers Ins. of Wausau*, 211 *Mich.App.* 330, 535 *N.W.*2d 583 (1995) ("The issue on appeal is a narrow one. We must determine whether an intentional tort, as that term is defined in the WDCA [Workers' Disability Compensation Act], is identical to 'bodily injury intentionally caused,' as that term is defined in the insurance contract. We hold that it is not."), *appeal denied*, 459 *Mich.* 858, 584 *N.W.*2d 920 (1998);[6] NJM offers no

---

[6] The Michigan workers' compensation statute's exclusive remedy provision cited in *Cavalier*, " § 131(1) of the WDCA" [Mich. Comp. Laws Serv. § 418.131(1)], defines the intentional tort exception to include injury "certain to occur," rather than "substantially certain," as in the *Millison/Laidlow* definition.

> An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. *An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.*
>
> [*Cavalier, supra,* 535 *N.W.*2d at 586 (emphasis added).]

The Michigan court nonetheless distinguishes certain-to-occur from intent-to-injure claims for purposes of the C–5 exclusion. *See Ziebart Int'l Corp. v. CNA Ins. Cos.*, 78 *F.*3d 245 (6th Cir.1996).

> [I]t is reasonable to conclude, as the *Cavalier* court did, that the Act's definition of "intentional tort" and the language "bodily injury intentionally caused" in an insurance policy do not entirely overlap, and that insurers must defend employers in cases like the instant case despite the presence of an intentional tort exclusion clause like the one before us.
>
> [*Id.* at 251.]

contrary reported cases on similar facts, and we have found none.[7]

Our dissenting colleague suggests that insurance companies have been relying on *Joseph Oat* "for over a decade." But *Schmidt*, describing the combination of Workers' Compensation and Employers' Liability insurance as "seamless coverage," was decided only three years later. That decision certainly should have put insurers on notice that *Joseph Oat* might not be the final word on the C–5 exclusion. Moreover, the C–5 exclusion appears in similar policies issued in other states, where the scope of coverage is not governed by *Joseph Oat*. *See, e.g., Reliance*; *Royal*; *Travelers*, and *Cavalier, supra*. Thus we do not view insurance company reliance as a persuasive argument for adhering to *Joseph Oat*.

We subscribe to the explanation of the Court of Appeals of Michigan in *Cavalier*:

> The conceptual difficulty that bedevils presentation of the present case is attributable to the use of virtually identical terminology in the exclusive remedy provision of the WDCA and in the appellee's insurance policies to describe two different things.
>
> . . . .
>
> "[I]ntentional tort" as used in § 131 of the WDCA, as has already been established supra, has two related, but nonetheless distinct, meanings: (1) that of "true intentional tort" and (2) that of a legislatively formulated equivalent—applicable only to establishing tort liability in avoidance of the exclusive remedy provision—where an employer willfully disregards knowledge of a situation in which injury is "certain" to occur. In the insurance policy here in question, however, the exclusion relates to "true intentional torts." The insurance policy exclusion overlaps only partially with the residual tort liability recognized for purposes of the exclusive remedy of worker's compensation.

---

[7] NJM relies on several Ohio cases that are not on point. *E.g., Penn Traffic Co. v. AIU Ins. Co.*, 99 *Ohio St.*3d 227, 790 *N.E.*2d 1199 (2003) (addressing an employer's policy that expressly excluded liability coverage "for both direct-intent and substantial-certainty employer intentional torts." *Id.* at 1204.) The only directly contrary decision cited by NJM with respect to the same C–5 coverage dispute is a brief, unpublished Fourth Circuit Court of Appeals decision arising under North Carolina law. *Travelers Ins. Co. v. Noble Oil Servs., Inc.*, No. 94–1598, 42 *F.*3d 1386, 1994 *U.S.App.Lexis* 34397 (4th Cir. Dec. 7, 1994).

[535 *N.W.2d* at 585, 588–89.]

Reversed.

COBURN, P.J.A.D., dissenting.

As the majority recognizes, in *N.J. Mfrs. Ins. v. Joseph Oat Corp.*, 287 *N.J.Super.* 190, 670 *A.2d* 1071 (App.Div.), *certif. denied*, 142 *N.J.* 515, 665 *A.2d* 1108 (1995), which was written by Judge Conley and joined by Judges Landau and Pressler, we held that the exact same exclusion at issue in the instant case was valid and enforceable. I agree with that decision and find entirely unpersuasive the reasons given for rejecting its analysis and result. The creation of conflicting decisions of this court on this point is particularly unfortunate since the insurance companies have been relying on Judge Conley's decision for over a decade. It is reasonable to assume that the insured employers, who are presumed to know the law, also understood the import of this exclusion and knew, or should have known, that they were not insured for intentional conduct, however that conduct might be proved. "[A]n intentional wrong can be shown not only by proving a subjective desire to injure, but also by a showing ... that the employer knew an injury was substantially certain to result." *Laidlow v. Hariton Mach. Co.*, 170 *N.J.* 602, 614, 790 *A.2d* 884 (2002). Therefore, I respectfully dissent.