885 A.2d 477 (2005)
381 N.J. Super. 211
UNITED STATES LIABILITY INSURANCE GROUP, Plaintiff-Appellant,
v.
SECURITY INSURANCE COMPANY OF HARTFORD, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 19, 2005.
Decided November 9, 2005.
*478 Marshall, Dennehey, Warner, Coleman & Goggin, attorneys for appellant (Walter F. Kawalec, III, Cherry Hill, on the brief).
McElroy, Deutsch, Mulvaney & Carpenter, attorneys for respondent (John T. Coyne, of counsel; Shannon M. Engelman, Morristown, on the brief).
Before Judges STERN, PARKER and GRALL.
The opinion of the court was delivered by
STERN, P.J.A.D.
Plaintiff United States Liability Insurance Group (USLIG) appeals from a judgment of December 3, 2004, entered on cross motions for summary judgment, in this declaratory judgment action commenced to establish which carrier was obligated to provide a defense to Seabrook House, which was insured by both.[1] In essence, USLIG was ordered to reimburse defendant Security Insurance Company (Security) for the cost of defense in the underlying action, which had been commenced by Regina Marcacci against Seabrook House.[2] USLIG was the insurer under Seabrook House's "Professional Liability Policy," and Security provided *479 "workers' compensation and employer's liability" protection.
In the underlying complaint, Marcacci sought recovery under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 et seq., because she was fired in retaliation for her reports concerning fraud by her employer Seabrook House. Marcacci alleges that she was the only vice-president and employee terminated during an alleged restructure. In her original and amended complaint, she alleged, in part:
7. During the course of her employment, plaintiff became aware of several instances of illegal activity, practices and/or conduct by defendant Seabrook House and/or conduct which she reasonably believed constituted illegal activity and/or practices in relation to audits by the State of New Jersey, licensing regulations governing health care and treatment facilities promulgated by state and federal governments and agencies, and other public policies. Examples of such illegal activity, practices and/or conduct include, but are not limited to, "fixing" clinical records for patients which were incomplete; billing and insurance claim improprieties which claimed that services were performed at licensed facilities when they in fact were not; placement of beds in patient rooms that violated the number and manner permitted by law; placing certain patients in facilities not licensed to treat that classification of patients; placing patients in facilities without medical supervision as required by law; hiring employees without obtaining criminal background checks and/or fingerprint testing as required by law; approving and making payment for expenses which are not permissible expenses for a non-profit corporation and not approved by the Board of Directors of defendant Seabrook.
8. During the course of her employment, plaintiff reported such illegal activity, practices and/or conduct to her direct supervisor, Edward Diehl, the President of Seabrook House and/or other supervisors, managers and employees of Seabrook House.
9. During the course of her employment, plaintiff objected to such illegal activity, practices and/or conduct to her direct supervisor, Edward Diehl, the President of Seabrook House and/or other supervisors, managers and employees of Seabrook House.
10. During the course of her employment, plaintiff instructed employees of Seabrook House not to engage in such illegal activity, practices and/or conduct.
11. On February 13, 2001, after having been employed by defendant Seabrook House for almost 20 years, plaintiff was terminated from her employment.
She also alleged:
14. Defendant Seabrook House illegally and improperly retaliated against plaintiff for engaging in such protected activity by taking adverse employment action against her during her employment; by removing departments and areas of work from her direct supervision and responsibility; by instructing employees under her supervision to disregard her instructions and directions; by taking other adverse employment action against her during her employment with defendant, all in violation of N.J.S.A. 34:19-1 et seq.

15. In addition, defendant Seabrook House illegally and improperly retaliated against plaintiff for engaging in such protected activity by taking adverse employment action against her by terminating her employment on or about February *480 13, 2001 all in violation of N.J.S.A. 34:19-1 et seq.

16. As a direct and proximate cause of the above actions of defendant, plaintiff's rights under N.J.S.A. 34:19-1 et seq. were violated and she has been caused to suffer severe and permanent injuries, losses and damages including but not limited to emotional distress and mental anguish, humiliation, economic losses including but not limited to lost wages, lost benefits and other losses and damages.
The amended complaint also alleged breach of contract. In light of our disposition, we need not consider the impact of that claim or the issue of allocation of coverage.
In Marcacci's answers to interrogatories in the underlying action presented to the Law Division on the motions for summary judgment, Marcacci stated the following:
Since the date of the allegations contained in your Complaint, have you undergone or received any treatment for any mental and emotional disturbance? If so, please state the nature and extent of any treatment; the names and addresses of each doctor, psychiatrist, psychologist, practitioner, hospital, clinic, or institution treating you; and all diagnoses and prognoses made concerning any condition, giving the date and cost of each.
ANSWER: Plaintiff has been treated by her family physician Dr. Young and Dendrinos, Vineland, NJ for depression, stress and anxiety. She has also been prescribed anti-depressant and/or anti-anxiety medications.
In the June 11, 2002 letter of Marcacci's counsel written before the declaratory judgment action was filed, the following was stated:
We recently received copies of plaintiff's medical records from Dr. Dendrinos, located in Vineland, New Jersey. I will summarize the pertinent information below.
Initially, plaintiff saw Dr. Dendrinos on December 4, 2001 and her most recent visit was on May 24, 2002. Within that time period, plaintiff saw the doctor eight times. Plaintiff complained that she could not sleep well at night. She also stated that she had been depressed, and had been taking antidepressant medication (Celexa). The doctor noted that plaintiff was not suicidal, but was depressed. Plaintiff complained that she had been very anxious, she cried, and had been under "stress." She may decide to see a psychiatrist. The record noted that either plaintiff saw or was planning to see a Dr. O'Connor, Dr. Jacob and Dr. Grey. Because of this additional information, we will obtain the required authorizations from plaintiff and issued [sic] subpoenas for these medical records.[3]
Schmidt v. Smith, 155 N.J. 44, 50, 713 A.2d 1014 (1998), involved the same coverage as Security's policy involved in this case. Schmidt made clear that, under N.J.S.A. 34:15-72, an employer was obligated "to obtain sufficient coverage for the payment of any obligation it might incur on account of bodily injuries to an employee," 155 N.J. at 51, 713 A.2d 1014, and "[t]he employers liability section of the contract was to provide compensation for bodily injuries to workers falling outside the workers' compensation system. . . ." Id. at 51-52, 713 A.2d 1014. While holding that the C(7) exclusion involved in Schmidt *481 and in this case[4] "is valid so long as the liability arising from those discomforts is not related to bodily injury," the Court held that coverage was required under the policy similar to Security's because "the type of injuries [the underlying employee in the Law Against Discrimination action] sustained  `emotional injures accompanied by physical manifestations'  qualify as `bodily' for these purposes," id. at 52, 713 A.2d 1014, and because "[t]here is nothing in this record to suggest that any part of [the employer's] liability stemmed from non-bodily injuries." Id. at 52 n. 1, 713 A.2d 1014.
Here, in contrast, the reference to "depression, stress and anxiety" as part of the cause of action is incidental to the thrust of the complaint directed to improper termination based on public policy as established by the Legislature in CEPA, and no objective physical or bodily injuries are alleged to have resulted from the depression, stress or anxiety. Moreover, unlike here, the plaintiff in Schmidt was the victim of physical touching, assault and harassment, whereas in this case plaintiff sustained no physical contact. Id. at 47, 713 A.2d 1014.
We recognize that in Charles Beseler Co. v. New Jersey Manufacturers Insurance Co., 380 N.J.Super. 193, 881 A.2d 770 (App.Div.2005), and New Jersey Manufacturers Insurance Co. v. Delta Plastics Corp., 380 N.J.Super. 532, 883 A.2d 399 (App.Div.2005), we required coverage under the same policy for allegedly intentional wrongful acts of the employer.[5] Those cases, however, dealt with the intentional act exclusion embodied in section C(5), whereas this case concerns exclusion C(7), not involved in those cases. Charles Beseler, supra, 380 N.J.Super. at 202, 881 A.2d 770; New Jersey Mfrs. Ins. Co., supra, 380 N.J.Super. at 544, 883 A.2d 399. In any event, assuming the acts alleged here are intentional and exclusion C(5) does not apply, the record in this case does not involve allegations or proof of bodily injuries sufficient to bar application of exclusion C(7) which the Court found valid in Schmidt. 155 N.J. at 52, 713 A.2d 1014. Indeed, our Supreme Court has held that coverage under a "bodily injury" policy, because of ambiguity in terms of coverage, encompasses emotional injuries accompanied by physical manifestations. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 178-79, 607 A.2d 1255 (1992). However, allegations of "loss of sleep and irritability" do not rise to the level of "physical manifestations"; and "bodily injury" coverage does not include purely emotional injuries without physical manifestations. SL Indus., Inc. v. American Motorists Ins. Co., 128 N.J. 188, 201-05, 607 A.2d 1266 (1992). According to the Court, "in the context of purely emotional distress, without physical manifestations, the phrase `bodily injury' is not ambiguous." Id. at 202, 607 A.2d 1266.[6] As Judge Ronald Freeman held in granting summary judgment to Security:

*482 [T]he plaintiff in this Court's opinion has not alleged bodily injury in her complaint or responses to discovery. Here, the plaintiff did not allege emotional injuries with physical manifestations where the allegations in the complaint include emotional distress, mental anguish, humiliation, economic losses and breach of contract.
We agree with that analysis on the record presented on the cross-motions. Moreover, while emotional distress including anxiety and depression may be as painful and debilitating as physical injury, there is no reasonable expectation of coverage under the Security policy.
Affirmed.
NOTES
[1] One order is stamped "granted" and one is stamped "denied." The scope of the order is unclear because of the stamp as opposed to the statement of relief ordered. The parties seem to agree, however, that USLIG was also ordered to reimburse Security for the cost of the declaratory judgment action.
[2] Following the entry of judgment in this case, we concluded that there was sufficient evidence of pretext for plaintiff to survive the grant of a motion for directed verdict entered at trial. Hence, this appeal undoubtedly impacts the costs of defense and indemnification at the second trial.
[3] Security contends that Marcacci was under care and received medication for stress, anxiety and depression for six years, but that is not dispositive on the summary judgment motion.
[4] The Security policy provides:

C. Exclusions
This insurance does not cover:
. . . .
5. [B]odily injury intentionally caused or aggravated by you;
. . . .
7. [D]amages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions[.]
[5] We also recognize that Charles Beseler and Delta Plastics are arguably close cases because traditional workers' compensation coverage would have been available for the employee for their bodily injuries.
[6] While not cited in Charles Beseler, we note that Voorhees involving a homeowner's policy held "that the event causing the distress will be deemed an accidental occurrence entitling the insured to coverage when the insured's actions, although intentional, were not intentionally injurious." 128 N.J. at 169, 607 A.2d 1255.