911 A.2d 47

CHARLES BESELER COMPANY, PLAINTIFF–RESPONDENT, v. O'GORMAN & YOUNG, INC., A CORPORATION; FIREMAN'S FUND INSURANCE COMPANIES AND THE AMERICAN INSURANCE COMPANY, CORPORATIONS, DEFENDANTS, AND NEW JERSEY MANUFACTURERS INSURANCE COMPANY, A CORPORATION, DEFENDANT–APPELLANT.

Argued September 25, 2006—Decided December 4, 2006.

*Michael J. Marone,* argued the cause for appellant (*McElroy, Deutsch, Mulvaney & Carpenter,* attorneys; *Richard J. Williams, Jr.,* on the briefs).

*Thomas W. Sweet,* argued the cause for respondent.

*Lance J. Kalik,* submitted a brief on behalf of *amici curiae,* Insurance Council of New Jersey, American Insurance Associa-

tion, Property Casualty Insurers Association of America and National Association of Mutual Insurance Companies (*Riker Danzig Scherer Hyland & Perretti,* attorneys; *Mr. Kalik* and *Ronald Z. Ahrens,* on the brief).

PER CURIAM.

## I.

This appeal involves interpretation of an exclusion contained in the liability portion of an employer's Workers' Compensation and Employers Liability Insurance Policy (Policy). The facts involved are these.

Malden A. Homar was an employee of Liberty Bureau Steel, a division of the Charles Beseler Company (collectively, Beseler). On Homar's first day at Beseler, he was assigned to work on a large press brake machine, which bends metal into library shelves. Tragically, the machine compressed unexpectedly and amputated eight of his fingers.

Homar filed workers' compensation and common-law claims against Beseler.[1] To avoid having his common-law cause of action barred by the exclusive remedy provision in the Workers' Compensation Act, *N.J.S.A.* 34:15–8, Homar asserts that Beseler committed an intentional wrong; specifically that Beseler's actions "created a substantial certainty that plaintiff would be injured." Among other things, the complaint alleges that the employer removed certain safety guards and warnings on the machine.

Prior to Homar's injury, Beseler had purchased a Workers' Compensation and Employers Liability Insurance Policy from New Jersey Manufacturers Insurance Company (NJM). Part One of the Policy requires NJM to pay workers' compensation benefits and to defend any suit against Beseler that involves a claim for workers' compensation benefits. Part Two of the Policy

---

[1] Workers' compensation benefits were paid to Homar and are not part of this appeal.

requires NJM to defend Beseler if an employee properly files a common-law action against the company. Specifically, Part Two covers "bodily injury by accident or bodily injury by disease," but contains also Paragraph C.5., which excludes "bodily injury intentionally caused or aggravated by [the employer]."

Beseler requested that NJM defend the company against Homar's common-law claims. NJM refused, taking the position that the phrases, "intentionally caused" in the C.5. exclusion and "intentional wrong" in the exception created in *N.J.S.A.* 34:15–8 regarding the exclusivity of the workers' compensation remedy, were co-terminus. Based on that premise, NJM reasoned that the C.5. exclusion relieved NJM of the duty to defend Beseler against Homar's "substantial certainty" claim because the latter was the equivalent of the "intentional wrong" contemplated by *N.J.S.A.* 34:15–8. Beseler filed this declaratory judgment action seeking, among other relief, to require NJM to defend Beseler in the common-law action brought by Homar.

The case proceeded by way of cross motions for summary judgment. The motion court held in favor of Beseler and declared that NJM must defend. The Appellate Division affirmed, rejecting NJM's interpretation and holding that the exclusion does not apply in this matter. *Charles Beseler Co. v. O'Gorman & Young, Inc.*, 380 *N.J.Super.* 193, 202, 881 *A.*2d 770 (2005). Writing for the panel, Judge Stern explained that the C.5. language excludes "injuries intentionally caused, and not the type of act alleged in this case—an unintended injury caused by an intentional wrong." *Ibid.* We granted certification, 185 *N.J.* 393, 886 *A.*2d 663 (2005), and now affirm.

## II.

Among other reasons given to support its conclusion, the panel below employed established rules of construction applicable when interpreting insurance policies. When there is ambiguity in the language of the insurance contract, courts are to "interpret the contract to comport with the reasonable expectations of the in-

sured." *Zacarias v. Allstate Ins. Co.*, 168 *N.J.* 590, 595, 775 *A.*2d 1262 (2001). Repeatedly we have reminded reviewing courts that the "objectively reasonable expectations" of an insured should be fulfilled. *Ibid.* (internal quotations and citations omitted). Consistent with that expectation, "policy exclusions must be narrowly construed; [and] the burden is on the insurer to bring the case within the exclusion." *Proformance Ins. Co. v. Jones*, 185 *N.J.* 406, 415, 887 *A.*2d 146 (2005) (quoting *Princeton Ins. Co. v. Chunmuang*, 151 *N.J.* 80, 95, 698 *A.*2d 9 (1997)).

In this matter we deal with an exception to an insurance policy written in the specialized area of workers' compensation coverage and related employer liability for an employee's common-law cause of action for bodily injuries. The latter category of actions are not easily pursued.

We have described the workers' compensation system "as an historic 'trade-off' whereby employees relinquish their right to pursue common-law remedies in exchange for prompt and automatic entitlement to benefits for work-related injuries." *Laidlow v. Hariton Mach. Co., Inc.*, 170 *N.J.* 602, 605, 790 *A.*2d 884 (2002) (citing *Millison v. E.I. du Pont de Nemours & Co.*, 101 *N.J.* 161, 174, 501 *A.*2d 505 (1985)); *see also N.J.S.A.* 34:15–7 to –8. That system, however, is not without exception. When a worker's injuries have been caused by an employer's "intentional wrong," that "intentional wrong" voids the "trade-off" and the employee may seek both workers' compensation benefits and common-law remedies. *N.J.S.A.* 34:15–8.

The test for "intentional wrong" has evolved. In *Millison, supra,* we defined "intentional wrong" as an action, committed with deliberate intent, that had a "substantial certainty" of causing injury. 101 *N.J.* at 178–79, 501 *A.*2d 505. In *Laidlow, supra,* we clarified that an "intentional wrong" included "actions taken with a subjective desire to harm" as well as "instances where an employer knows that the consequences of those acts are substantially certain to result in such harm." 170 *N.J.* at 613, 790 *A.*2d 884 (citing W. Prosser and W. Keeton, *The Law of Torts* § 80 at 569

(5th ed. 1984)). An employee's filing of a common-law action, which asserts that an employer acted in a manner that was "substantially certain" to result in harm, therefore prompts the next question: whether the employer's liability insurer will defend the employer and ultimately bear the costs of an adverse judgment.

The Appellate Division in this matter determined that an "intentional wrong," qualifying for exception to the surrender of common-law remedies under *N.J.S.A.* 34:15–8, was broader than the C.5. exclusion from employer-liability coverage for injuries "intentionally caused" by the employer. *Charles Beseler Co., supra,* 380 *N.J.Super.* at 202, 881 *A.*2d 770; *see also N.J. Mfrs. Ins. Co. v. Delta Plastics Corp.,* 380 *N.J.Super.* 532, 541, 883 *A.*2d 399 (App.Div.2005) (holding same). Relying on *Laidlow,* the Appellate Division separated "intentional wrong" into injuries that the employer subjectively intended to cause and injuries that the employer was substantially certain to cause. *Charles Beseler Co., supra,* 380 *N.J.Super.* at 202, 881 *A.*2d 770. The panel concluded that bodily injuries, which are "intentionally caused" by the employer and are subject to the C.5. exclusion, encompassed only "intentional injuries." *Ibid.* So interpreted, the exclusion was held not to apply to Homar's claim, which involved "an unintended injury caused by an intentional wrong." *Ibid.* The panel refused to read into the C.5. exclusion any additional words that would extend the exclusion to a claim of wrongful employer conduct that allegedly was substantially certain to have caused injury, which would satisfy the *Laidlow* standard for permitting a common-law action. *Ibid.* Thus, the court ordered NJM to provide coverage for Beseler. *Id.* at 203, 881 *A.*2d 770.

### III.

We agree with that result. The policy language does not unambiguously exclude injuries falling under the "substantially certain" prong of the intentional-wrong exception recognized by *Laidlow.*

The C.5. exclusion precludes coverage for bodily injuries "intentionally caused or aggravated by" the employer. That language clearly excludes only injuries that result from a subjective intent to injure. However, once *Laidlow* was decided, it became clear that there are alternative methods of proving an intentional wrong and avoiding the exclusivity of the workers' compensation remedy. The substantial-certainty method of proof is distinct, but also will demonstrate an "intentional wrong." C.5.'s language does not unambiguously exclude such claims from coverage.

An insured could reasonably conclude that the "intentionally caused or aggravated by" language is narrower than the statutory "intentional wrong" exception under the workers' compensation scheme. Based on that eminently reasonable reading of the precise language of the exclusion, an insured such as Beseler would not expect that it would be bare of coverage against the allegations in Homar's common-law action. The reasonableness of such an expectation is advanced by Part Two's affirmative promise to provide coverage for "all sums [the employer] legally must pay as damages because of bodily injury to [its] employees." In sum, due to its lack of express language excluding conduct substantially certain to result in injury, we find C.5.'s exclusion to be ambiguous and construe it, as we must, in favor of the insured.[2]

We add that our conclusion in respect of this policy-exclusion language, which we are informed is fairly standard in the industry, accords with decisions from several other jurisdictions. *See Cavalier Mfg. Co. v. Employers Ins. of Wausau,* 211 *Mich.App.* 330, 535 *N.W.2d* 583, 588–89 (1995) (holding, in respect of identical C.5. provision, that liability policy only excluded injuries resulting from employer's subjective intent to injure, whereas language of workers' compensation act's exclusion was broader and allowed "an

---

[2] We are aware that prior to the issuance of *Laidlow*, the C.5. exclusion had been interpreted otherwise. *See N.J. Mfrs. Ins. Co. v. Joseph Oat Corp.,* 287 *N.J.Super.* 190, 670 *A.2d* 1071 (App.Div.1995), *certif. denied,* 142 *N.J.* 515, 665 *A.2d* 1108 (1995). That decision is inconsistent with the reasoning of our holding today.

employee to bring suit against an employer where the employer committed a deliberate act, specifically intending an injury, or where the employer 'had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.' "); *see also Royal Indem. Co. v. Soneco/Ne., Inc.*, 183 *F.Supp.*2d 526, 532 (D.Conn.2002) (holding that employer was not excluded from coverage for employee claim premised on substantial-certainty theory); *Travelers Indem. Co. v. PCR Inc.*, 889 *So.*2d 779, 781–82 (Fla.2004) (same).

### IV.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA-SOTO—7.

*Opposed*—None.