**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2643-21

SYLVIA MELANIA TEJADA
DE TAPIA,

     Plaintiff,

v.

74 INDUSTRIES, INC.,

     Defendant-Appellant,

and

VELCRO USA, INC., CARLISLE
FINISHING, LLC, COATS
AMERICAN, INC., a/k/a
COATS NORTH AMERICA,
CHAMPLAIN PLASTICS, INC.,
BETHEL INDUSTRIES, INC.,
AMERICAN & EFIRD, LLC,
BRITTANY DYEING &
PRINTING CORP., SINAI
CUTTING, EXACTA CUTTING,
NEWBURY CUTTING, BII CORP.,
a/k/a B2 CORP., CHST OF NJ,
LLC,

     Defendants,

and

74 INDUSTRIES, INC.,

       Defendant/Third-Party
       Plaintiff-Appellant,

v.

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

       Third-Party Defendant-
       Respondent.

_____

Argued October 12, 2023 – Decided July 12, 2024

Before Judges Vernoia and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5288-18.

Thomas J. Monroe argued the cause for appellant (Certilman Balin Adler & Hyman, LLP, attorneys; Thomas J. Monroe, on the brief).

Richard J. Williams, Jr., argued the cause for respondent (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Richard J. Williams, Jr., of counsel and on the brief).

PER CURIAM

Slyvia Melania Tejada de Tapia was injured at work and filed a workers'

compensation claim against her employer, 74 Industries, Inc. (74 Industries),

which was settled pursuant to an order approving settlement with dismissal under N.J.S.A. 34:15-20 (the Section 20 Settlement). The Section 20 Settlement resulted in the dismissal of plaintiff's workers' compensation claims with prejudice.

New Jersey Manufacturers Insurance Company's (NJM) had issued a standard workers' compensation and employers liability insurance policy (the Policy) to 74 Industries and recommended settlement of plaintiff's workers' compensation claim.[1] Prior to the settlement, however, plaintiff had also filed a complaint in the Law Division alleging intentional torts against 74 Industries, and 74 Industries filed a third-party complaint against NJM seeking coverage under the Policy for plaintiff's claims of intentional wrong asserted against 74 Industries. NJM denied coverage citing policy exclusions for intentional torts and moved to dismiss 74 Industries's third-party complaint. The Law Division

---

[1] The Policy contains two mutually exclusive parts. Part One of the Policy provides coverage for 74 Industries's statutory obligations under the Workers' Compensation Act, N.J.S.A. 34:15-1 to -147 (WCA), to pay benefits to an employee injured during the course of their employment. Part Two of the Policy provides coverage for claims "where recovery is permitted by law" and excludes coverage and/or defense for civil suits brough against 74 Industries, including an intentional wrong.

A-2643-21

judge granted NJM's motion to dismiss 74 Industries's third-party complaint for failure to state a claim. We affirm.

I.

Plaintiff suffered an injury after she was bitten or stung by an insect during the course of her employment as a sewing machine operator with 74 Industries. According to plaintiff, insects routinely infested the packages of fabric and materials that employees handled and frequently bit and stung employees. Plaintiff was hospitalized for treatment related to the infection she suffered as a result of the insect bite. The infection caused her right leg to swell and form green open sores.

Plaintiff filed a workers' compensation claim against 74 Industries seeking medical and temporary disability benefits related to her injuries. 74 Industries denied plaintiff's workers' compensation claim and sought coverage from NJM under the Policy.

NJM defended 74 Industries in workers' compensation court and eventually recommended 74 Industries settle plaintiff's case for a lump sum payment of $25,000 by way of an order approving settlement with dismissal, with prejudice, under Section 20, N.J.S.A. 34:15-20, of the WCA.

In its settlement letter, NJM advised 74 Industries that "[t]he proposed settlement for $25,000 takes into account estimate[d] permanency value, the exposure to temporary total disability benefits[,] . . . the exposure to liability for medical expenses, and the cost and fees that would be incurred under an [o]rder [a]pproving [s]ettlement, but which would shift to the petitioner for a [S]ection 20 resolution." NJM further wrote, "the proposed Section 20 settlement provides the benefit of certainty and a final closure."

Approximately one month later, the parties appeared in workers' compensation court where plaintiff accepted the Section 20 settlement on the record before a judge of workers' compensation. At that hearing, the workers' compensation judge explained to plaintiff that in return for the $25,000 lump sum payment, NJM and 74 Industries would "receive[] the benefit of what we call a dismissal of your claim petition with prejudice." The judge further explained that with respect to her claim petition, plaintiff was barred from "seek[ing] anything further including money, including medical treatment, including payment of any medical bills[.]" In response to a query from the judge, plaintiff confirmed she understood and accepted the settlement. At no time during the hearing or prior to the court's acceptance of the settlement did the worker's compensation judge or plaintiff refer to or acknowledge plaintiff's

pending Law Division action or address whether or to what extent plaintiff's acceptance of the settlement affected her right, if any, to pursue any intentional-wrong claims against 74 Industries. [2]

The judge entered an order approving the Section 20 settlement, stating in relevant part:

> This is a lump sum settlement between the parties in the amount of $25,000 pursuant to N.J.S.A. 34:15-20 which has the effect of a dismiss[al] with prejudice, being final as to all rights and benefits of the petitioner and is a complete and absolute surrender and release of all rights arising out of this/these claim petition(s). The payment hereunder shall be recognized as a payment of workers' compensation benefits for insurance rating purposes only.

Prior to the entry of the Section 20 settlement, however, plaintiff had filed an action in the Law Division alleging her injuries were caused by 74 Industries's intentional misconduct under the principles explained by the Court in <u>Laidlow</u>

_____

[2] In addition, the summary judgment record includes a certification from plaintiff stating that her understanding of the settlement of the worker's compensation action was that in exchange for her receipt of the $25,000 lump sum payment, she would give up "all the claims [she had] made against 74 Industries in the [Workers' Compensation] Action, and only the claims [she had] made in the [Workers' Compensation] action[.]" Plaintiff further certified that "at no time did [the judge of workers' compensation] ever tell [her] that [she] could not prosecute an intentional wrong claim against 74 Industries . . . if [she] entered into the Section 20 settlement[.]"

A-2643-21

v. Hariton Mach. Co., 170 N.J. 602, 14 (2002).  The "intentional wrong" exception to the surrender of common-law remedies under the Worker's Compensation Act is governed by N.J.S.A. 34:15-8—also known as the exclusive remedy provision of the Act.  See Millison v. E. I. Du Pont de Nemours & Co., 101 N.J. 161, 169, 179 (1985) (holding "the Compensation Act should serve as a worker's sole and exclusive remedy under circumstances such as those alleged.").  More particularly, N.J.S.A. 34:15-8 provides that the WCA is the exclusive remedy for claims made against an employer by an employee for injuries or death while working for the employer, "except for intentional wrong."

In Laidlow, our Supreme Court clarified that "an intentional wrong is not limited to actions taken with a subjective desire to harm, but also includes instances where an employer knows that the consequences of those acts are substantially certain to result in such harm."  170 N.J. at 613.  Consequently, an employee seeking to prove his employer committed an intentional wrong must demonstrate either (1) that the employer had a subjective desire to injure, or (2) that "based on all the facts and circumstances of the case . . . the employer knew an injury was substantially certain to result."  Id. at 614.

A-2643-21

Plaintiff had filed a series of amended complaints, each of which included the same four counts against 74 Industries. Plaintiff filed an amended complaint on September 19, 2019, a second-amended complaint on November 14, 2019, a third-amended complaint on March 30, 2020, and a fourth-amended complaint on February 1, 2021. In each of her complaints, plaintiff asserted four counts against 74 Industries, alleging intentional wrongs that plaintiff claimed are within the exception to the workers' compensation bar under N.J.S.A. 34:15-8.

In count one, titled "Intentional Wrong against 74 Industries," alleged 74 Industries breached its duty to plaintiff to keep the "premises free from known defects, dangers, and dangerous and hazardous conditions not typically associated with [p]laintiff's job responsibilities" by ignoring her complaints and those of its other employees, and by failing or refusing to undertake any action to correct, prevent, or alleviate the injuries. In count two, titled "Conduct Substantially Certain to Cause Injury Against 74 Industries," plaintiff alleged 74 Industries was "substantially and virtually certain that its failure to remedy the persistent and continuing dangerous and hazardous condition created by large flying insects" embedded in fabrics handled by its employees in the workplace caused injuries.

A-2643-21

In count three, titled "Intentional Wrong against 74 Industries," plaintiff alleged 74 Industries "was aware that its refusal to allow an injured employee to seek prompt medical treatment after sustaining an injury at work would cause injury to such an employee or exacerbate or aggravate the injury sustained at work." In count four, titled "Conduct Substantially Certain to Cause Injury against 74 Industries," plaintiff alleged 74 Industries was substantially and virtually certain that directing plaintiff "to choose between continuing her employment with 74 Industries or seeking prompt medical treatment after sustaining an injury at work" would cause injury.

Defendant tendered plaintiff's third-amended complaint—with the same four counts presented in the fourth-amended complaint—to NJM for defense and indemnification under the Policy. In a letter dated November 18, 2020 to 74 Industries, NJM denied coverage under Part Two of the Policy for claims in the third-amended complaint citing various "terms, conditions and exclusions of the NJM policy" which served "as the basis for NJM's disclaimer." 74 Industries moved to amend its answer and add a counterclaim and third-party complaint against NJM seeking a declaratory judgment that NJM was required to fully defend, indemnify, and reimburse it pursuant to the Policy, which provided coverage for the period from January 1, 2016, to January 1, 2017. NJM then

moved to dismiss 74 Industries's third-party complaint against it for failure to state a cause of action.

The motion court granted NJM's motion to dismiss 74 Industries's third-party complaint for failure to state a claim pursuant to Rule 4:6-2(e). In its written opinion, the court analyzed the WCA's exclusive remedy provision and the Supreme Court caselaw defining the narrow exception to the provision for injuries caused by intentional wrongs by the employer. The court found plaintiff's fourth amended complaint had pleaded causes of action for intentional wrongs, and that "Part Two of the Policy clearly and unambiguously excludes intentional wrongs from insurance coverage."

The court further found that plaintiff's allegations fell squarely within the Policy's C5 exclusion for "intentional wrongs" and rejected 74 Industries's contention the Policy was ambiguous because the C7 exclusion and C7 endorsement provided coverage for "bodily injuries" under Part Two of the Policy. The court stated that "[w]hile plaintiff assert[s] that she was threatened with adverse employment action if she left the jobsite for medical treatment, . . . none of her counts allege employment discrimination or retaliation . . . ." and concluded the alleged threat involved an intentional wrong. The court

further reasoned that there is no duty to defend when an action is not covered by a policy.

It is the court's dismissal of 74 Industries's coverage claims that is the subject of this appeal as plaintiff's Law Division causes of action against 74 Industries have been settled. This case is therefore not about plaintiff's damages for the intentional wrongs alleged in her complaint, but rather it requires that we consider whether NJM had a duty under the Policy to indemnify and defend 74 Industries in the Law Division action for the intentional wrongs alleged by plaintiff in her complaints.

## II.

"We review a grant of a motion to dismiss a complaint for failure to state a cause of action de novo, applying the same standard under Rule 4:6-2(e) that governed the motion court." Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014). That standard is whether the pleadings even "suggest[]" a basis for the requested relief. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citation omitted). As a reviewing court, we assess only the "legal sufficiency" of the claim based on "the facts alleged on the face of the complaint." Green v. Morgan Props., 215 N.J. 431, 451 (2013) (quoting Printing Mart-Morristown, 116 N.J. at 746). Consequently, "[a]t this

11

preliminary stage of the litigation [we are] not concerned with the ability of [a party] to prove the allegation contained in the complaint," Printing Mart-Morristown, 116 N.J. at 746, rather a court must accept the facts as pled are true and accord them "all legitimate inferences," Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166, 183 (2005).

The workers' compensation system is "an historic 'trade-off' whereby employees relinquish their right to pursue common-law remedies in exchange for prompt and automatic entitlement to benefits for work-related injuries." Laidlow, 170 N.J. at 605 (citing Millison, 101 N.J. at 174); see also N.J.S.A. 34:15-7 to -8. "That system, however, is not without exception. When a worker's injuries have been caused by an employer's 'intentional wrong,' that 'intentional wrong' voids the 'trade-off' and the employee may seek both workers' compensation benefits and common-law remedies." Charles Beseler Co. v. O'Gorman & Young, Inc., 188 N.J. 542, 546 (2006) (citing N.J.S.A. 34:15–8).

"The interpretation of an insurance policy, like any contract, is a question of law, which we review de novo." Sosa v. Mass. Bay Ins. Co., 458 N.J. Super. 639, 646 (App. Div. 2019) (citing Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy, 210 N.J. 597, 605 (2012)). "In attempting to discern the meaning of a provision in an insurance contract, the

plain language is ordinarily the most direct route." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008) (citing Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)).

"We are guided by general principles: 'coverage provisions are to be read broadly, exclusions are to be read narrowly, potential ambiguities must be resolved in favor of the insured, and the policy is to be read in a manner that fulfills the insured's reasonable expectations.'" Sosa, 458 N.J. Super. at 646 (quoting Selective Ins. Co., 210 N.J. at 605). By contrast, "[i]f the plain language of the policy is unambiguous, we will 'not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased.'" Ibid. (quoting Chubb Custom Ins. Co., 195 N.J. at 238).

"[C]ourts will enforce exclusionary clauses if [they are] 'specific, plain, clear, prominent, and not contrary to public policy,' notwithstanding that exclusions generally 'must be narrowly construed,' and the insurer bears the burden to demonstrate they apply." Abboud v. Nat'l Union Fire Ins. Co. of Pittsburgh, 450 N.J. Super. 400, 407 (App. Div. 2017) (quoting Flomerfelt v. Cardiello, 202 N.J. 432, 441-42 (2010)).

## III.

74 Industries's arguments essentially fall under three theories: that NJM had a duty to defend that was triggered by NJM's representation of 74 Industries in the underlying workers' compensation case, including recommending that NJM settle plaintiff's petition via a Section 20 settlement; that NJM had a duty to defend because a fair reading of two exclusions—the C5 and C7 exclusions—and their accompanying endorsements are ambiguous and requires NJM to sustain coverage, see Charles Beseler Co., 380 N.J. Super. at 202 ("[w]hen an insurance policy's language fairly supports two meanings, one that favors the insurer, and the other that favors the insured, the policy should be construed to sustain coverage") (quoting President v. Jenkins, 180 N.J. 550, 563(2004)); and that, as a matter of public policy, NJM had a duty to indemnify them.

First, we reject 74 Industries's argument that NJM had a duty to defend it in the Law Division action because the Section 20 settlement in workers' compensation court was intended to resolve "all of plaintiff's claims against 74 Industries." 74 Industries further argues that by virtue of NJM's recommendation and representation of 74 Industries in the workers'

14

compensation case, NJM was duty bound to continue to represent it in the Law Division and provide coverage for plaintiff's claims.

"Section 20 is a settlement mechanism available to the employee, the employee['s] dependents, and the employer to avoid a hearing on contested issues and to provide the parties with the security of a certain outcome." Univ. of Mass. Mem'l Med. Ctr., Inc. v. Christodoulou, 360 N.J. Super. 313, 347-48 (App. Div. 2003), rev'd on other grounds, 180 N.J. 334, 349 (2004). A Section 20 settlement is "designed to achieve a complete settlement of all issues for all of the parties concerned." Id. at 320. As such, a plaintiff's acceptance of a Section 20 settlement bars a subsequent lawsuit against the paying employer as it would be unfair to hold the employer liable for both common law damages and workers' compensation liability. See Hawksby v. DePietro, 165 N.J. 58, 66-67 (2000) (holding that a Section 20 settlement barred a subsequent medical malpractice claim against plaintiff's treating physician and co-employee because it would be unfair to hold the employer liable for both common law damages and workers' compensation liability).

Prior to the Section 20 settlement, plaintiff had filed her fourth-amended complaint in the Law Division alleging her intentional wrong claims. The workers' compensation settlement record is silent as to plaintiff's then-pending

15

intentional-wrong suit in the Law Division. In fact, there is no mention of the then-pending Law Division action before the workers' compensation court judge by any party or by the judge at the settlement hearing.

Rather, during the Section 20 settlement hearing, the workers' compensation judge solely addressed the impact of the Section 20 settlement, stating that "in return for making this payment to you . . . 74 Industries and . . . NJM received the benefit of what we call a dismissal of your claim petition with prejudice." The judge went on to explain "that means this case is over, finished and done with forever." (Emphasis added). In response, plaintiff said, "I understand."

However, in the Section 20 settlement, plaintiff consented only to a release of all claims "arising out" of the claim petition filed in workers' compensation court, which by definition under N.J.S.A. 34:15-8 cannot and did not include claims for intentional wrongs such as the causes of action plaintiff had filed against 74 Industries in the Law Division. Accordingly, there is nothing in the record to support defendant's argument that the Section 20 settlement also resolved plaintiff's Law Division claims. Thus, 74 Industries's argument that NJM had a duty to defend and indemnify it on the pending Law Division claims based on the Section 20 settlement is unavailing.

74 Industries next argues the Policy is ambiguous, specifically as to the C5 and C7 exclusions—and corresponding endorsements—and that this ambiguity requires that NJM provide a defense and indemnity in the Law Division action. 74 Industries also argues the language in C5 is ambiguous and must further be read in conjunction with the "bodily injury" language in the endorsement to the C7 exclusion.

The C5 exclusion states: "This insurance does not cover: '[b]odily injury intentionally caused or aggravated by you.'" The endorsement provides:

> With respect to [the] C5 [exclusion], this insurance does not cover any and all intentional wrongs within the exception allowed by N.J.S.A 34:15-8 including but not limited to bodily injury caused or aggravated by an intentional wrong committed by you or your employees, or bodily injury resulting from an act or omission by you or your employees, which is substantially certain to result in injury.
>
> [emphasis added.]

In Charles Beseler Co., we reviewed a version of this exclusion and endorsement without the "substantially certain" language and considered whether the exclusion covered all "intentional wrongs" contemplated in N.J.S.A. 34:15-8. 380 N.J. Super. 193 (App. Div. 2005). Previously in Laidlow, the Court had explained that "an intentional wrong is not limited to actions taken with a subjective desire to harm, but also includes instances where an employer

knows that the consequences of those acts are substantially certain to result in such harm." 170 N.J. at 613. The Court reasoned:

> [I]n order for an employer's act to lose the cloak of immunity of N.J.S.A. 34:15-8, two conditions must be satisfied: (1) the employer must know that his actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize.
>
> [Id. at 617.]

Relying on Laidlow, we held that the C5 exclusion without the "substantially certain" language was ambiguous because it excluded from coverage "only injuries that result from a subjective intent to injure." Charles Beseler Co., 380 N.J. Super. at 202. We also found that the C5 exclusion failed to exclude from coverage the subset of intentional wrong claims based on "wrongful employer conduct that allegedly was substantially certain to have caused injury." Ibid. We determined that such claims categorically fall under the "substantially certain" prong of the intentional-wrong exception recognized by Laidlow. Id. at 202-03.

The Supreme Court adopted our determination that an "'intentional wrong,' qualifying for exception to the surrender of common-law remedies under

N.J.S.A. 34:15–8, was broader than the [C5] exclusion from employer-liability coverage for injuries 'intentionally caused' by the employer." Id. at 547 (citing Charles Beseler Co., 380 N.J. Super. at 202). And, the Court further concluded that:

> bodily injuries, which are "intentionally caused" by the employer and are subject to the [C5] exclusion, encompassed only "intentional injuries." So interpreted, the exclusion was held not to apply to [the employee]'s claim, which involved "an unintended injury caused by an intentional wrong." The panel refused to read into the [C5] exclusion any additional words that would extend the exclusion to a claim of wrongful employer conduct that allegedly was substantially certain to have caused injury, which would satisfy the Laidlow standard for permitting a common-law action.
>
> [Charles Beseler Co., 188 N.J. at 547. (internal citations omitted).]

In affirming our decision in Charles Beseler Co., the Court stated "the policy language does not unambiguously exclude injuries falling under the 'substantially certain' prong of the intentional-wrong exception recognized by Laidlow." Ibid. It further stated:

> [a]n insured could reasonably conclude that the "intentionally caused or aggravated by" language is narrower than the statutory "intentional wrong" exception under the workers' compensation scheme. Based on that eminently reasonable reading of the precise language of the exclusion, an insured such as

19

> Beseler would not expect that it would be bare of coverage against the allegations in [employee]'s common-law action.
>
> [Ibid.; accord New Jersey Mfrs. Ins. Co. v. Delta Plastics Corp., 380 N.J. Super. 532 (App. Div. 2005), aff'd, 188 N.J. 582 (2006).]

The C5 endorsement in Part Two of the Policy at issue here includes the "substantially certain" language such that it resolves the ambiguity as to the "substantially certain" prong of the intentional wrong standard we considered in Laidlow and the Court addressed in Charles Beseler Co. 74 Industries acknowledges that it "is not aware of any case law challenging the validity of the current [C5] exclusion[.]" In any event, the plain and unambiguous language in the C5 endorsement clearly covers plaintiff's intentional tort claims under N.J.S.A. 34:15-8—both those that "result from a subjective intent to injure" and those that are "substantially certain to have caused injury." Charles Beseler Co., 188 N.J. at 547. Thus, we reject 74 Industries's claim the C5 exclusion is ambiguous, and we therefore conclude the Policy excludes from coverage plaintiffs' intentional tort claims.

74 Industries next argues that a separate endorsement to the C7 exclusion provides coverage, because the C7 endorsement states NJM "will defend any claim . . . where bodily injury is alleged." This argument is equally unavailing

for the following reasons.  First, the C7 exclusion expressly provides there is no coverage for:

> Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

The separate C7 endorsement provides:

> With respect to Exclusion C7, we will defend any claim, proceeding or suit for damages where bodily injury is alleged.  We have the right to investigate and settle.  We will not defend or continue to defend after the applicable limits of insurance have been paid.  Such policy limits include any legal costs assessed against you on behalf of your employee(s).

Here, 74 Industries relies on a broad reading of the endorsement provision, "we will defend any claim . . . where bodily injury is alleged" but, in doing so, ignores that the endorsement is limited to only claims that are otherwise excluded from coverage under the C7 exclusion.  It therefore incorrectly argues that the bodily injury allegations in plaintiff's complaint trigger a coverage obligation for any and all bodily injury claims simply because the C7 endorsement references "bodily injury."

The plain language of the C7 exclusion excludes coverage for allegations of "coercion, discipline, harassment, termination of any employee, or any

21

personnel practices, policies, acts or omissions," which the Supreme Court in Schmidt v. Smith defined as "a class of discomforts that one typically would not associate with bodily injury[.]" 155 N.J. 44, 52 (1998) (reviewing a substantially similar version of the C7 exclusion that did not include the term "coercion"). The Court determined that "[t]he exclusion is valid as long as the liability arising from those discomforts is not related to bodily injury," and that had that plaintiff alleged "emotional injuries accompanied by physical manifestations," the carrier's attempt to avoid indemnification would violate "the public policy underlying the workers' compensation scheme" and would be void. Ibid. (first citing Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 179 (1992), then citing Variety Farms, Inc. v. New Jersey Mfrs. Ins. Co., 172 N.J. Super. 10, 22 (App. Div. 1980)).

Although the C7 endorsement provides that NJM "will defend any claim, proceeding or suit for damages where bodily injury is alleged," the endorsement cannot be read separate and apart from the language in the exclusion provision. See New Jersey Transit Corp. v. Certain Underwriters at Lloyd's London, 461 N.J. Super. 440, 454 (App. Div. 2019), aff'd, 245 N.J. 104 (2021) ("We must read the contract as a whole 'in a fair and common sense manner.' The court must 'give effect to the whole policy, not just one part of it[.]'") (quoting Cypress

Point Condominium Ass'n, Inc. v. Adria Towers, L.L.C., 226 N.J. 403, 415-16 (2016)). In fact, the endorsement is limited to the circumstances set forth in the C7 exclusion: the endorsement expressly states it applies "[w]ith respect to Exclusion C7." And, there is no language in the endorsement suggesting the exception it provides for bodily injuries applies to any other policy provision. Again, based on the plain language, the endorsement provides only that C7 exclusion will not be used to deny coverage for bodily injuries, such as "the emotional injuries accompanied by physical manifestations" explicitly noted by the Schmidt Court, 155 N.J. at 52, it does not create new coverage for all bodily injuries outside C7 the circumstances referenced in the exclusion.

Here, the court rejected 74 Industries's argument that the C7 exclusion and endorsement compelled indemnification because it found plaintiff's allegations did not fall within those provisions, stating "[w]hile plaintiff asserts that she was threatened with adverse employment action if she left the jobsite for medical treatment," none of her counts alleged employment discrimination or retaliation to come under C7.

We agree with the court's conclusion. It is true that plaintiff did not plead any counts falling within the C7 exclusion for "[d]amages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation,

harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies,[3] acts or omissions[.]" However, as the motion court acknowledged, "plaintiff assert[s] that she was threatened with adverse employment action if she left the jobsite for medical treatment," which based on a fair reading of the complaint suggests a cause of action for coercion.[4] Furthermore, in count three, plaintiff alleged 74 Industries "was aware that its refusal to allow an injured employee to seek prompt medical treatment after sustaining an injury at work would cause injury to such an employee or exacerbate or aggravate the injury sustained at work."

Regardless, defendant's claim it is entitled to coverage under the C7 exclusion fails because plaintiff's causes of action are founded on intentional wrongs and they are excluded from coverage under the C5 exclusion. Indeed, as the Court recognized in Schmidt, the employer there was entitled to coverage for bodily injury claims claimed by the plaintiff-employee falling within the C7

---

[3]   Although C7 covers personnel policies and practices, 74 Industries did not and does not claim any such personnel policies or practices are at issue here.

[4]   In her "Allegations Common To Each Count," plaintiff alleges she "immediately reported the injury and showed the injury to her supervisor who told [p]laintiff to stay on the factory line until she was unable [to] work any longer because if the supervisor told their manager, the manager would fire [p]laintiff."

endorsement but only because the plaintiff had not alleged that the employer had caused the alleged injuries intentionally such that the C5 exclusion applied. 155 N.J. at 50-51. As such, the Court in Schmidt recognized that there is no coverage for any claimed actions that fall within the C7 bodily injury endorsement, under C7, where, as here, the actions allegedly resulting in the bodily injuries constitute intentional wrongs excluded from coverage by the C5 exclusion. See ibid.

We are further persuaded that as the language in the C5 exclusion is clear and unequivocal, plaintiff's claims of intentional wrong conduct on the part of her employer, as defined in Laidlow, are not covered under NJM's Policy. 74 Industries's argument that the C7 endorsement must control—to require NJM to indemnify it—without taking into account the C5 exclusion which excludes coverage for bodily injuries intentionally caused or substantially certain to be caused by the insured, ignores general contract principles. See New Jersey Transit Corp., 461 N.J. Super. at 454 ("The court must 'give effect to the whole policy, not just one part of it[.]'"). 74 Industries's approach runs contrary to Schmidt, which recognized that the any claimed actions that fall within the coverage for bodily injury under C7, as reinforced by the later C7 endorsement, does not cover acts—like those alleged against 74 Industries—that are

intentional because they are subject to the C5 exclusion.  See Schmidt, 155 N.J. at 50-51.

Lastly, we reject 74 Industries's argument that public policy supports coverage for intentional wrongs, as we have consistently held that exclusions for intentional wrongs contained in insurance policies are legally valid.  See Allstate Ins. Co. v. Malec, 104 N.J. 1, 119 (1986) (quoting Ambassador Ins. Co. v. Montes, 76 N.J. 477, 482 (1978)).  We therefore find no basis to support 74 Industries's argument that public policy favors coverage for plaintiff's intentional wrongs filed in Law Division.  See Schmidt, 155 N.J. at 50-52 (reviewing both the C5 and C7 exclusions and explaining these insurance contracts provide coverage for "bodily injuries falling both inside and outside of the workers' compensation structure" and "[t]o the extent Exclusion C7 would otherwise operate to deny coverage" for emotional injuries accompanied by physical manifestations vicariously caused by the employer, "the exclusion violates the public policy underlying the workers' compensation scheme and is therefore void.").

We therefore discern no basis to conclude NJM had a duty to defend or indemnify 74 Industries against plaintiff's intentional wrong claims made in the

Law Division fourth-amended complaint by virtue of NJM's settlement recommendation in the workers' compensation court or on any other basis.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

A-2643-21