SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Dionicio Rodriguez v. Shelbourne Spring, LLC** **(A-39-23) (089044)**

**Argued September 9, 2024 -- Decided December 12, 2024**

**FASCIALE, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the Hartford Underwriters Insurance Company (Hartford) is obligated to defend SIR Electric LLC (SIR) -- the insured and the employer -- against an employee's workplace personal injury lawsuit. The lawsuit alleges that SIR's negligence, gross negligence, recklessness, and intentional wrongdoing caused the employee to suffer bodily injury during an accident on the job.

After being injured while working for SIR, plaintiff Dionicio Rodriguez filed a petition for workers' compensation benefits under SIR's Workers' Compensation and Employers' Liability Policy with Hartford. After Rodriguez began receiving benefits under the Hartford Policy, he filed a personal injury complaint seeking money damages for his workplace injuries and named SIR as a defendant. SIR tendered the defense of the complaint to Hartford. Hartford disclaimed any obligation to provide a defense, and SIR filed a third-party complaint against Hartford, claiming that Hartford wrongfully disclaimed defense coverage.

The trial judge granted Hartford's motion to dismiss SIR's complaint, concluding that the Hartford Policy expressly excluded intent-based claims. SIR moved for reconsideration and filed a motion to amend its third-party complaint, contending for the first time that the Hartford Policy's enhanced intentional injury exclusion (EII exclusion) violated public policy. The judge denied both motions, concluding that the Hartford Policy excluded insurance coverage for intentional conduct by SIR and that amendment would be futile. The Appellate Division affirmed. The Court granted leave to appeal. 257 N.J. 247 (2024).

**HELD:** Here, Hartford has no duty to defend the employer. The employee's allegations of simple negligence, gross negligence, and recklessness (the negligence-based claims), which are subject to the workers' compensation exclusivity bar, are not covered under Part One of the insurance policy and are excluded from coverage under Part Two of the policy. Additionally, the employee's allegations of intentional wrongdoing are excluded under the policy.

1

1.  An insurer is contractually obliged to provide the insured with a defense against all actions covered by the insurance policy.  Therefore, whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the insurance policy.  When the two correspond, the duty to defend arises, irrespective of the claim's actual merit.  But an insurer has no duty to defend against a claim, which measured by the pleadings, even if successful, would not be within the policy coverage.  (pp. 7-8)

2.  The New Jersey Workers' Compensation Act reflects a historic trade-off whereby employees relinquished their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffered injuries by accident arising out of and in the course of employment.  Workers' compensation is thus the exclusive remedy for injured employees who qualify under the Act.  The only exception to that "exclusivity bar" or "workers' compensation bar" is for injuries caused by "intentional wrongs," for which an employee may still seek redress under common law causes of action.  In Laidlow v. Hariton Machinery Co., Inc., the Court clarified the test to determine when an employer's conduct rises to the level of an "intentional wrong" under N.J.S.A. 34:15-8.  170 N.J. 602, 617 (2002).  Here, Rodriguez raised claims based on negligence, gross negligence, and recklessness on the one hand, and Laidlow claims on the other.  Accordingly, Rodriguez's negligence-based claims are distinct from his Laidlow claims and are limited by the Act's exclusivity bar.  Laidlow claims, by contrast, are not limited by the Act's exclusivity bar.  (pp. 8-12)

3.  The Court reviews in detail the allegations set forth in Rodriguez's complaint and the relevant provisions of Part One of the Hartford Policy.  Part One incorporates by reference the requirements set forth in the workers' compensation law, which covers employees' accidental bodily injuries "arising out of and in the course of [their] employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause."  N.J.S.A. 34:15-1.  Rodriguez's personal injury lawsuit does not seek benefits as defined by the Act; instead, it seeks money damages as compensation for his workplace injuries.  Rodriguez already recovered those benefits available under Part One of the Hartford Policy for his injury, and Hartford satisfied its contractual obligation to SIR by providing Rodriguez with those workers' compensation benefits separate from this action.  With regard to Rodriguez's Laidlow claims, Part One applies only to benefits under the Act and cannot impose a duty to defend for claims of intentional misconduct, which fall outside the Act.  Therefore, Part One of the Hartford Policy imposes no duty to defend SIR against any of Rodriguez's claims.  (pp. 12-17)

4.  Part Two of the Hartford Policy provides employers' liability insurance.  It expressly excludes from coverage both "[a]ny obligation imposed by a workers compensation . . . law" (Exclusion C4) and "[b]odily injury intentionally caused or

2

aggravated" by the covered employer (Exclusion C5), and it specifies that Hartford has "no duty to defend a claim, proceeding or suit that is not covered by this insurance." Part Two also contains the so-called EII exclusion, which states that, "[w]ith respect to Exclusion C5, this insurance does not cover any and all intentional wrongs within the exception allowed by N.J.S.A. 34:15-8." Part Two thus expressly excludes from coverage -- in Exclusion C4 -- any claims covered by workers' compensation law, and so does not require Hartford to defend SIR against Rodriguez's claims of negligence, gross negligence, and recklessness. Turning to Rodriguez's Laidlow claims, or claims of intentional wrongdoing, Part Two imposes no duty on Hartford to defend SIR because those claims are not covered by the Hartford Policy through Exclusion C5 and the EII exclusion. (pp. 17-23)

5. Finally, the Court concludes that the trial judge properly denied SIR's motion for leave to amend its third-party complaint as futile. The Court's case law and long-standing jurisprudence undermine SIR's belated contention that intentional wrong exclusions are generally inconsistent with public policy. And more specific legal developments support the validity of the exclusions here. After the Court found C5 exclusions in two employers' liability policies to be ambiguous, see Charles Beseler Co. v. O'Gorman & Young, Inc., 188 N.J. 542, 548 (2006); N.J. Mfrs. Ins. Co. v. Delta Plastics Corp., 188 N.J. 582, 582 (2006), the Compensation Rating and Inspection Bureau added language to the standard C5 exclusion, which the New Jersey Department of Banking and Insurance (DOBI) approved in 2007. The EII exclusion in the Hartford Policy contains language identical to the language approved by DOBI and complies with the Court's holding in Beseler by including "express language excluding conduct substantially certain to result in injury." 188 N.J. at 548. Thus, SIR's amendment would be futile because the challenged intentional wrong exclusions comply with Beseler and Delta Plastics and have been DOBI-approved since 2007; they are not against public policy. (pp. 23-27)

      **AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion. JUSTICE HOFFMAN did not participate.**

3

SUPREME COURT OF NEW JERSEY

A-39 September Term 2023

089044

Dionicio Rodriguez,

Plaintiff,

v.

Shelbourne Spring, LLC, Green Power
Developers, LLC, Unity Construction,
Rocco A. Dimichino, Sundance Electric Co.,
LLC, SF Johnson Electrical, Inc.,
Facility Solutions Group, Johnson Controls
Security Solutions, LLC, and
Managed Business Communications, Inc.,

Defendants,

and

SIR Electric, LLC,

Defendant/Third-Party
Plaintiff-Appellant,

v.

Hartford Underwriters
Insurance Company,

Third-Party Defendant-Respondent.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| September 9, 2024 | December 12, 2024 |

Benjamin Clarke argued the cause for appellant
(DeCotiis, Fitzpatrick, Cole & Giblin, attorneys;
Benjamin Clarke and Gregory J. Hazley, on the brief).

Katherine E. Tammaro argued the cause for respondent
(Wilson, Elser, Moskowitz, Edelman & Dicker,
attorneys; Katherine E. Tammaro, on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

In this appeal, we consider whether the Hartford Underwriters Insurance Company (Hartford) is obligated to defend SIR Electric LLC (SIR) -- the insured and the employer -- against an employee's workplace personal injury lawsuit. The lawsuit alleges that SIR's negligence, gross negligence, recklessness, and intentional wrongdoing caused the employee to suffer bodily injury during an accident on the job.

Here, Hartford has no duty to defend the employer. The employee's allegations of simple negligence, gross negligence, and recklessness (the negligence-based claims), which are subject to the workers' compensation exclusivity bar, are not covered under Part One of the insurance policy and are excluded from coverage under Part Two of the policy. Additionally, the

2

employee's allegations of intentional wrongdoing, known as Laidlow[1] claims, are excluded under the policy.

We therefore affirm the Appellate Division's judgment upholding the trial judge's dismissal, without leave to amend, of SIR's third-party complaint against Hartford.

I.

SIR is an electrical contractor that employed plaintiff Dionicio Rodriguez. Hartford issued a Workers' Compensation and Employers' Liability Policy to SIR. Although we will analyze the Hartford Policy in greater detail, Part One of the Hartford Policy provides workers' compensation insurance for "benefits" under workers' compensation law. And Part Two of the Hartford Policy provides employers' liability insurance for "damages because of bodily injury," but excludes from coverage, among other claims, bodily injury intentionally caused by SIR. While on the job, Rodriguez opened an electrical panel on a breaker and injured himself.

Rodriguez initially filed a petition for workers' compensation benefits under Part One of the Hartford Policy. Hartford complied with its contractual obligation and processed that petition. After Rodriguez began receiving those

---

[1] Laidlow v. Hariton Mach. Co., Inc., 170 N.J. 602, 606 (2002) (addressing the intentional wrong exception to the Workers' Compensation Act's exclusive remedy, as set forth in N.J.S.A. 34:15-8).

3

benefits, he filed a personal injury complaint seeking money damages for his workplace injuries and named SIR as a defendant. SIR tendered the defense of the complaint to Hartford.

Hartford disclaimed any obligation to provide a defense. Notably, Hartford determined that SIR's policy excluded "any obligation imposed by a workers compensation . . . law" and "[b]odily injury intentionally caused by [SIR]." Hartford concluded that it accordingly had no duty to defend SIR against Rodriguez's claims.

SIR filed a third-party complaint against Hartford, claiming that Hartford wrongfully disclaimed defense coverage. SIR argued that although Rodriguez's complaint included allegations of intentional wrongdoing, it also included specific allegations of non-intentional wrongdoing, such as "gross negligence" and "simple negligence," which SIR contended were covered by the Hartford Policy.

Hartford filed a Rule 4:6-2(e) motion to dismiss SIR's third-party complaint, and SIR cross-moved for summary judgment. The trial judge granted Hartford's motion and denied SIR's cross-motion, concluding that the Hartford Policy expressly excluded intent-based claims. In denying SIR's cross-motion, the judge determined, "Hartford has no duty to defend SIR against [Rodriguez's] common law tort suit."

4

SIR moved for reconsideration and filed a motion to amend its third-party complaint, contending for the first time that the Hartford Policy's enhanced intentional injury exclusion (EII exclusion) violated public policy. The judge denied reconsideration and characterized the sum of Rodriguez's allegations to be "specifically and solely a Laidlow claim." He concluded that the Hartford Policy excluded insurance coverage for intentional conduct by SIR. Consistent with his earlier ruling, the judge explained that "an employee otherwise has no [tort] cause of action against [an] employer for a work-related injury." The judge denied SIR's motion to amend as moot because the amendment would be futile.

On leave to appeal, the Appellate Division affirmed the orders dismissing SIR's third-party complaint, denying SIR's cross-motion for summary judgment, and denying SIR's motion to amend its third-party complaint.

We granted SIR's motion for leave to appeal. 257 N.J. 247 (2024).

II.

Relying on unpublished Appellate Division decisions,[2] SIR argues primarily that Hartford owes SIR a duty to defend against Rodriguez's

_____

[2] The parties acknowledge that unpublished opinions do not constitute precedent and are not binding. Except for limited circumstances, which do not

5

allegations of negligence and gross negligence. SIR contends that the appellate court "ignored SIR's primary contention . . . that a duty to defend exists in the workers' compensation part, [Part One], of [the Hartford Policy]." It also asserts that the appellate court erred by focusing exclusively on Part Two of the Hartford Policy and the related endorsement to the Hartford Policy containing the EII exclusion. SIR maintains that the judge erred by denying its motion to amend its third-party complaint, reiterating that the EII exclusion is against public policy.

Hartford argues that it has no duty to defend SIR against Rodriguez's "negligence-based" allegations because those workplace bodily injury tort claims are unrelated to "benefits" under the workers' compensation law. As to Rodriguez's Laidlow allegations, whether they are characterized as intentional wrongdoing, "gross negligence," or "recklessness," Hartford asserts that the Hartford Policy expressly excludes those claims. Hartford contends that SIR waived its argument that the EII exclusion violates public policy and that, in any case, SIR's assertion is groundless.

_____

apply here, "no unpublished opinion shall be cited by any court." See R. 1:36-3 (governing unpublished opinions).

III.

Long-standing legal principles govern the question of whether Hartford has a duty to defend SIR against Rodriguez's claims.

A.

A duty to defend arises from an insurer's contractual obligation under the language of the insurance policy. Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22 (1984). Specifically, "[a]n insurer is contractually obliged to provide the insured with a defense against all actions covered by the insurance policy." Abouzaid v. Mansard Gardens Assocs. LLC, 207 N.J. 67, 79 (2011).

An insurer's duty to defend is broader than its duty to indemnify. Danek v. Hommer, 28 N.J. Super. 68, 79 (App. Div. 1953), aff'd o.b., 15 N.J. 573 (1954). A duty to defend "comes into being when the complaint states a claim constituting a risk insured against," regardless of the claim's likelihood of success. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992) (quoting Danek, 28 N.J. Super. at 77). Indeed, the duty to defend will arise even if "the claims are poorly developed and almost sure to fail," id. at 174, so long as they "comprehend[] an injury which may be within the policy," Abouzaid, 207 N.J. at 80 (quoting Danek, 28 N.J. Super. at 78). "Liability of the insured to the plaintiff is not the criterion; it is the allegation in the

7

complaint of a cause of action, which, if sustained, will impose a liability covered by the policy." Danek, 28 N.J. Super. at 77 (emphasis added). Therefore, "[w]hether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the insurance policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." Voorhees, 128 N.J. at 174. But an insurer has no duty to defend against a claim, "which measured by the pleadings, even if successful, would not be within the policy coverage." Danek, 28 N.J. Super. at 77.

We interpret the insurance policy terms de novo. AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co., 256 N.J. 294, 312 (2024). "[A]n insurance policy should be interpreted according to its plain and ordinary meaning," with any ambiguities "resolved in favor of the insured." Voorhees, 128 N.J. at 175. But courts cannot "engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." AC Ocean Walk, 256 N.J. at 312 (internal quotation marks omitted) (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)).

The covered-claim limitation on the duty to defend is particularly significant here, given the carefully constructed compromise that undergirds our workers' compensation scheme.

In 1911, the Legislature enacted the New Jersey Workers' Compensation Act, N.J.S.A. 34:15-1 to -147, reflecting a "historic trade-off whereby employees relinquished their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffered injuries by accident arising out of and in the course of employment." Millison v. E.I. Du Pont de Nemours & Co., 101 N.J. 161, 174 (1985). Once the employer and employee agree to the trade-off,[3] "compensation for personal injuries . . . by accident arising out of and in the course of employment shall be made by the employer without regard to the negligence of the employer." N.J.S.A. 34:15-7. Although employees may receive "swift and certain compensation payments" under the Act, they give up their right to a "potentially larger recovery in a common-law action" for negligence against their employer. Millison, 101 N.J. at 174. Accordingly,

---

[3] An employer and employee must agree to be bound by the Workers' Compensation Act through an "express or implied" agreement. N.J.S.A. 34:15-7. Such an agreement is presumed unless expressly stated otherwise. Id. at -9. Here, it is undisputed that SIR and Rodriguez are bound by the Act.

workers' compensation is the exclusive remedy for injured employees who qualify under the Act. See id. at 169.

The only exception to that "exclusivity bar" or "workers' compensation bar" is for injuries caused by "intentional wrongs," for which an employee may still seek redress under common law causes of action. See id. at 177; Schmidt v. Smith, 155 N.J. 44, 49 (1998) ("In exchange for this statutory remedy, the employee surrenders rights to sue the employer or fellow employees at common law except in cases where the injury stems from intentional wrongs committed by the employer or the fellow employees."); see also N.J.S.A. 34:15-8 ("If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was . . . injured or killed, except for intentional wrong.").

In Laidlow, this Court clarified the test to determine when an employer's conduct rises to the level of an "intentional wrong" under N.J.S.A. 34:15-8, holding that

> (1) the employer must know that his actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize.

10

> [Richter v. Oakland Bd. of Educ., 246 N.J. 507, 536
> (2021) (quoting Laidlow v. Hariton Mach. Co., Inc.,
> 170 N.J. 602, 617 (2002)).]

Under that test, "an intentional wrong is not limited to actions taken with a subjective desire to harm, but also includes instances where an employer knows that the consequences of those acts are substantially certain to result in such harm." Laidlow, 170 N.J. at 613. But the "substantial certainty" test is still a high standard to meet: to avoid allowing employees to circumvent the Act, courts "must demand a virtual certainty" before employees can proceed under the intentional wrong exception to sue their employer in tort. Van Dunk v. Reckson Assocs. Realty Corp., 210 N.J. 449, 470 (2012) (quoting Millison, 101 N.J. at 178).

As noted above, Rodriguez raised claims based on negligence, gross negligence, and recklessness on the one hand, and Laidlow claims on the other. The trial judge concluded on reconsideration that the entirety of Rodriguez's allegations "specifically and solely" amounted to a Laidlow claim. We disagree with the trial judge's characterization and conclude that the negligence-based claims are different from Rodriguez's intent-based Laidlow claims.

In Van Dunk, this Court held that although the employer committed an "exceptional wrong" in directing an employee to enter a trench in violation of

11

OSHA guidelines, the employee did not meet the Millison and Laidlow intentional-wrong test because a potentially grossly negligent, or even reckless, act was not an "intentional wrong." 210 N.J. at 472. It follows that if gross negligence is not enough to meet the Millison and Laidlow intentional-wrong test, neither is simple negligence.[4] This Court emphasized that "[t]he dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other hand must be drawn with caution" to avoid employees finding a loophole to the Act's exclusivity bar. Van Dunk, 210 N.J. at 470 (quoting Millison, 101 N.J. at 178) (emphasis added). Accordingly, Rodriguez's negligence, gross negligence, and recklessness claims are distinct from his Laidlow claims and are limited by the Act's exclusivity bar. Laidlow claims, by contrast, are not limited by the Act's exclusivity bar.

## B.

Against that legal backdrop, we consider whether Hartford owes a duty to defend here. We begin by reviewing Rodriguez's tort claims against SIR, and we then examine the terms of the Hartford Policy.

In his complaint, Rodriguez makes the following allegations:

---

[4] See also 1 Modern Workers Compensation § 102.12 at 160 (Thomson Reuters, June 2024 ed.) ("In states which exclude only intentional torts from the exclusivity provision, gross negligence tort actions are barred.").

12

30. S[IR] Electric recklessly directed [Rodriguez] to perform an abnormally dangerous activity in opening an electrical panel without any training or warnings in complete disregard for his health and safety.

31. S[IR] Electric was grossly negligent in requiring [Rodriguez] to perform an abnormally dangerous activity in opening an electrical panel without any training or warnings in complete disregard for his health and safety.

. . . .

37. Defendants were negligent for their failure to properly safeguard the premises.

38. Defendants were negligent in their actions and omissions, which proximately caused [Rodriguez]'s accident.

. . . .

45. Defendants were negligent in permitting a dangerous condition to exist.

46. Defendants were negligent in the ownership, operation, maintenance, upkeep, monitoring, supervision and management of the property and the construction site . . . .

47. Defendants were negligent in the hiring, employment, and/or continued employment of [their] employees/contractors.

. . . .

49. Defendant S[IR] Electric intentionally disregarded known safety features, required [Rodriguez] to work on electrical equipment without

13

safety devices, without warnings and <u>knowing there was a substantial certainty that [Rodriguez] would be harmed, and thereby intentionally or with substantial certainty</u>, exposed [Rodriguez] to the risk of death or serious injury.

. . . .

52. Defendant S[IR] Electric's conduct was so egregious as to cause a reasonable person to conclude with <u>substantial certainty</u> that [Rodriguez] would be injured in the very manner in which occurred to [Rodriguez].

53. [Rodriguez]'s resulting injuries and the context surrounding them are more than a fact of life of electrical employment and are <u>plainly beyond anything the [L]egislature could have contemplated as entitling the employees to recover only under the Compensation Act.</u>

. . . .

55. S[IR] Electric's reckless indifference for [Rodriguez]'s safety and well-being <u>rise to the level of a Laidlow claim</u>[,] piercing the Workers Compensation Act bar.

. . . .

67. <u>As a result of the negligence of the Defendants</u> as set forth herein, [Rodriguez] was caused serious injuries, including monetary damages, pain and suffering, and out of pocket cost(s).

. . . .

70. <u>As a result of the negligence of the Defendants</u>, singly, in combination, jointly, and severally, [Rodriguez] has been damaged in an amount

14

that exceeds the jurisdictional limits of all lower [c]ourts that would otherwise have jurisdiction herein, and demands damages, compensatory damages, pre-judgment interest, costs and disbursements in this action.

[(emphases added).]

We now turn to the language of the Hartford Policy itself.

C.

The Hartford Policy is divided into several parts, and the parties have raised arguments about Part One and Part Two of the policy. We consider each in turn.

1.

Part One of the Hartford Policy provides workers' compensation insurance and states:

**A. How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death[.]

. . . .

**B. We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C. We Will Defend**

15

> We have the right and duty to defend at our expense any claim, proceeding or suit against you <u>for benefits</u> payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.
>
> We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.
>
> [(emphases added).]

Part One of the Hartford Policy incorporates by reference the requirements set forth in the workers' compensation law. As we have noted, the Act covers employees' accidental bodily injuries "arising out of and in the course of [their] employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause." N.J.S.A. 34:15-1. For claims alleging conduct other than intentional wrongdoing by an employer, workers' compensation "is not cumulative or supplemental to the tort system, but is wholly substitutional." 1 <u>Modern Workers' Compensation</u> § 102.1 at 67.

Money damages for negligence-based tort claims do not fall under the policy language, "benefits . . . required by a workers' compensation law," which instead include recovery of medical benefits under N.J.S.A. 34:15-15; death benefits for dependents under N.J.S.A. 34:15-13; and temporary disability benefits, permanent total benefits, or permanent partial benefits under N.J.S.A. 34:15-12(a) to (c), regardless of fault. Because money

16

damages based on tort claims are not "benefits" and thus are not a covered risk, Hartford has no duty under Part One to defend SIR against Rodriguez's claims seeking such damages. Rodriguez's personal injury lawsuit does not seek benefits as defined by the Act; instead, it seeks money damages as compensation for his workplace injuries. Rodriguez already recovered those benefits available under Part One of the Hartford Policy for his injury, and Hartford satisfied its contractual obligation to SIR by providing Rodriguez with those workers' compensation benefits separate from this action.

SIR does not argue that Part One covers Rodriguez's <u>Laidlow</u> allegations of intentional wrongdoing. That is because Part One applies only to benefits under the Act and cannot impose a duty to defend for claims of intentional misconduct, which fall outside the Act.

Therefore, Part One of the Hartford Policy imposes no duty to defend SIR against any of Rodriguez's claims.

2.

Part Two of the Hartford Policy provides employers' liability insurance. Employers' liability insurance "is intended to serve as a gap-filler providing protection to the employer in those situations where the employee has a right to bring a tort action despite provisions of the workers' compensation statute." <u>Schmidt</u>, 155 N.J. at 49-50 (internal quotation marks omitted) (quoting

17

Producers Dairy Delivery Co. v. Sentry Ins. Co., 718 P.2d 920, 927 (Cal. 1986)).  N.J.S.A. 34:15-71 and -72 require an employer to "make sufficient provision for the complete payment of any obligation which he may incur to an injured employee."  Unless the Commissioner of Insurance approves an employer to provide its own liability insurance under N.J.S.A. 34:15-77, every employer "shall insure and keep insured his liability in any stock company or mutual association authorized to engage in workmen's compensation or employer's liability insurance in this State."  N.J.S.A. 34:15-78.

Employers' liability policies must cover both claims for benefits in the Division of Workers' Compensation and claims for workplace injuries in a common law court that fall outside of the workers' compensation system. Schmidt, 155 N.J. at 49 (citing N.J.S.A. 34:15-72).  In practice, "[w]orkers' compensation policies are routinely written in combination with an employers' liability policy.  The purpose of this combination of coverage is to provide protection for injured employees in those situations where workers' compensation insurance itself may not apply."  George J. Kenny & Frank A. Lattal, New Jersey Insurance Law § 19-4:1 (2024) (emphasis added).

Part Two of the Hartford Policy sets forth the following relevant terms and limitations of coverage for employers' liability insurance:

**A. How This Insurance Applies**

18

This underline employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

. . . .

**B. We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

. . . .

**C. Exclusions**

This insurance does not cover:

. . . .

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

. . . .

**D. We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

19

> We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

[(emphases added).]

The Hartford Policy contains an additional "New Jersey Part Two Employers Liability Endorsement," applying "only to the insurance provided by Part Two (Employers Liability Insurance)." That is the so-called EII exclusion, which states that,

> [w]ith respect to Exclusion C5, this insurance does not cover any and all intentional wrongs within the exception allowed by N.J.S.A. 34:15-8 including but not limited to, bodily injury caused or aggravated by an intentional wrong committed by you or your employees, or bodily injury resulting from an act or omission by you or your employees, which is substantially certain to result in injury.

[(emphases added).]

Like Part One, Part Two of the Hartford Policy covers suits for damages "because of bodily injury by accident." Whereas Part One covers obligations under the Act, however, Part Two expressly excludes from coverage -- in Exclusion C4 -- "obligation[s] imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law." As we have seen, the Act covers employees' accidental bodily injuries "arising out of and in the course of [their] employment, of

20

which the actual or lawfully imputed negligence of the employer is the natural and proximate cause." N.J.S.A. 34:15-1. And because negligence, gross negligence, and recklessness claims are processed exclusively through workers' compensation, they consequently are "obligations imposed solely by a workers' compensation . . . law" under Exclusion C4. See Millison, 101 N.J. at 176-77; Laidlow, 170 N.J. at 611; N.J.S.A. 34:15-8.

The C4 exclusion thus aligns with the purpose of requiring employers to carry both workers' compensation insurance and employers' liability insurance: it is a logical reflection of the gap-filling purpose of employers' liability insurance because it excludes from coverage under Part Two claims that are already covered under Part One. There is no gap to be filled here for the negligence, gross negligence, and recklessness claims against SIR because Part One already provided the required workers' compensation coverage -- the exclusive remedy available -- for those claims. See Millison, 101 N.J. at 176-77; Laidlow, 170 N.J. at 611; N.J.S.A. 34:15-8. Employers' liability coverage is meant to protect the employer "in those situations where the employee has the right to bring a tort action outside of the workers' compensation bar,"[5]

_____

[5] For example, although the C4 exclusion excludes coverage for the negligence-based claims, the employers' liability policy has been held to cover employee workplace sexual harassment claims "when the harassment results in bodily injury." See also Kenny & Lattal, § 19-4:4 (citing Schmidt, 155 N.J. at 44, 46).

21

Kenny & Lattal, § 19-4:2, and here, Rodriguez does not have a right to bring his negligence-based claims outside of the bar. In short, Part Two of the Hartford Policy does not require Hartford to defend SIR against Rodriguez's non-<u>Laidlow</u> claims because they are excluded from coverage under Exclusion C4.

SIR's reliance on <u>Danek v. Hommer</u> is misplaced. In <u>Danek</u>, the husband of an injured employee brought a common law action against the employer for loss of consortium. 28 N.J. Super. at 72-73. The appellate court held that although the husband's exclusive remedy fell under the Act, the insurance carrier nonetheless had a duty to defend the employer in the husband's action because the policy agreed to cover "any suits . . . alleging such injuries and demanding damages or compensation" even if such suits are "wholly groundless." <u>Id.</u> at 74, 78-79. Notably, this Court affirmed <u>Danek</u> for the reasons set forth by the Appellate Division. <u>See</u> 15 N.J. 573 (1954). The policy in <u>Danek</u> was much broader than the Hartford Policy and did not contain exclusions to the duty to defend. <u>See</u> 28 N.J. Super. at 72. Here, unlike <u>Danek</u>, the language of the Hartford Policy provides no coverage, regardless of the ultimate question of SIR's liability to Rodriguez.

Turning to Rodriguez's <u>Laidlow</u> claims, or claims of intentional wrongdoing, Part Two imposes no duty on Hartford to defend SIR because those claims are not covered by the Hartford Policy.

The C5 exclusion specifically excludes from insurance coverage any claims for "[b]odily injury intentionally caused or aggravated by [SIR]." The EII exclusion elaborates on C5 by excluding "all intentional wrongs within the exception allowed by N.J.S.A. 34:15-8 including . . . bodily injury caused or aggravated by an intentional wrong . . . which is substantially certain to result in injury." The <u>Laidlow</u> claims of intentional wrongdoing in the complaint are expressly excluded under the plain language of the Part Two policy exclusions as "intentionally caused or aggravated" by SIR under the C5 exclusion and as "substantially certain to result in injury" under the EII exclusion endorsement. Because the claims are not covered by the Hartford Policy, they cannot trigger a duty to defend on the part of the insurer.

In sum, none of Rodriguez's claims -- whether for negligent, grossly negligent, or recklessly indifferent conduct or for intentional wrongdoing -- fall within the coverage established in either Part One or Part Two of the Hartford Policy.

23

IV.

Finally, we conclude that the trial judge properly denied SIR's motion for leave to amend its third-party complaint as futile. See C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 306 (2023). An amendment is futile "when the newly asserted claim is not sustainable as a matter of law. In other words, there is no point to permitting the filing of an amended pleading when a subsequent motion to dismiss must be granted." Ibid. (quoting Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006)).

SIR moved for reconsideration and filed a motion to amend its third-party complaint, contending for the first time that the Hartford Policy's EII exclusion violated public policy. At oral argument, SIR acknowledged that it filed its motion to amend only after the trial judge found Hartford did not owe SIR a duty to defend under Part Two. Contrary to SIR's contention, the EII exclusion does not violate public policy. Amending the pleading to bring that argument would therefore have been futile.

Exclusions from coverage for intentional acts are common. This Court has consistently reiterated the principle that "[p]olicy provisions that exclude coverage resulting from intentional wrongful acts are 'common,' are 'accepted as valid limitations' and are consistent with public policy." Harleysville Ins. Cos. v. Garitta, 170 N.J. 223, 231 (2001) (alteration in original) (quoting

Allstate Ins. Co. v. Malbec, 104 N.J. 1, 6 (1986)). In Allstate, we held that an exclusion in an automobile liability insurance policy for the insured's intentional wrongful acts did not violate public policy. 104 N.J. at 13. In Harleysville, we upheld an intentional wrong exclusion in a homeowner's insurance policy. 170 N.J. at 225-26. Our case law and long-standing jurisprudence undermine SIR's belated contention that intentional wrong exclusions are generally inconsistent with public policy.

And more specific legal developments support the validity of the exclusions here. In two companion cases, this Court considered C5 exclusions in employers' liability policies -- like the C5 exclusion in the Hartford Policy -- that excluded coverage for bodily injury intentionally caused or aggravated by the employer. See Charles Beseler Co. v. O'Gorman & Young, Inc., 188 N.J. 542, 548 (2006); N.J. Mfrs. Ins. Co. v. Delta Plastics Corp., 188 N.J. 582, 582 (2006).

In those cases, this Court held that the C5 exclusions did "not unambiguously exclude injuries falling under the 'substantially certain' prong of the intentional-wrong exception recognized by Laidlow." Beseler, 188 N.J. at 547. Because the exclusions did not unambiguously exclude coverage, we held that the insurers were obligated to defend the employers. Id. at 547-48. Due to the "lack of express language excluding conduct substantially certain to

25

result in injury," the C5 exclusions were ambiguous and thus construed in favor of the insured employers.  Id. at 548.

Following Beseler and Delta Plastics, the Compensation Rating and Inspection Bureau (CRIB), pursuant to its authority to change its policy forms set forth in the New Jersey Workers' Compensation and Employers' Liability Insurance Manual (Manual), N.J.S.A. 34:15-90.2(i), amended the Manual to include an updated New Jersey Part Two Employers Liability Endorsement. The endorsement added language to the standard C5 exclusion because CRIB found it was necessary "to restore the intent of the policy exclusion for intentional injury."  CRIB Manual Amendment Bulletin #436 (2007).  CRIB found that our rulings in Beseler and Delta Plastics on the C5 exclusion "represent[ed] a significant erosion of the exclusive remedy provision of the [Act] and may lead to the increased costs in the price of workers compensation and employers liability insurance."  Ibid.  Thus, to restore the C5 intentional wrong exclusion while conforming with our directive that such an exclusion must be unambiguous, the new endorsement was amended.  It provides that

> [w]ith respect to Exclusion C5, this insurance does not cover any and all intentional wrongs within the exception allowed by N.J.S.A. 34:15-8 including but not limited to, bodily injury caused or aggravated by an intentional wrong committed by you or your employees, or bodily injury resulting from an act or omission by you or your employees, which is substantially certain to result in injury.

26

[CRIB Manual Amendment Bulletin #436, Exhibit 1, effective July 1, 2007.]

The New Jersey Department of Banking and Insurance (DOBI) approved the Manual Amendment Bulletin #436, which included the amended endorsement to the C5 exclusion, in a letter dated May 23, 2007. The EII exclusion in the Hartford Policy contains language identical to the language approved by DOBI in 2007 and complies with our holding in Beseler by including "express language excluding conduct substantially certain to result in injury." 188 N.J. at 548. Indeed, the EII exclusion has been in existence for seventeen years.

Thus, SIR's amendment would be futile because the challenged intentional wrong exclusions are not against public policy. Rather, those exclusions comply with Beseler and Delta Plastics and have been DOBI-approved since 2007. See Kenny & Lattal, § 19-4:2 n.20.

V.

We affirm the Appellate Division's judgment, which upheld the trial judge's order dismissing SIR's third-party complaint against Hartford, and conclude that Hartford has no duty to defend SIR against Rodriguez's on-the-job personal injury lawsuit.

27

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion. JUSTICE HOFFMAN did not participate.